CHRISTINA H. WANG, ESQ.
Nevada Bar No. 9713
FIDELITY NATIONAL LAW GROUP
8363 W. Sunset Road, Suite 120
Las Vegas, Nevada 89113
Telephone:  (702) 667-3000
Facsimile:  (702) 938-8721
Email: christina.wang@fnf.com
*Attorneys for Plaintiff Sphere, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| SPHERE, LLC, a California limited liability company,<br><br>               Plaintiff,<br><br>      vs.<br><br>PAWNEE LEASING CORPORATION, a foreign corporation; DONALD CLARK, an individual; DOES I through X; and ROE BUSINESS ENTITIES XI through XX,<br><br>             Defendants. | Case No.:<br><br><br><br>**COMPLAINT** |

      Plaintiff SPHERE, LLC ("Plaintiff"), by and through its attorneys, the Fidelity National Law Group, hereby complains and alleges against Defendants PAWNEE LEASING CORPORATION, DONALD CLARK, DOES I through X, and ROE BUSINESS ENTITIES XI through XX as follows:

## PARTIES

      1.     Plaintiff is a limited liability company duly formed and existing under the laws of the state of California.  Plaintiff's sole member/manager is Richard Razon.  Mr. Razon is, and at all times relevant herein was, a resident of San Mateo County, California.

      2.     Plaintiff is informed and believes, and on that basis alleges, that Pawnee Leasing Corporation ("Pawnee") a corporation duly formed and existing under the laws of the state of

1    Colorado with its principal place of business in Fort Collins, Colorado.

2        3.    Plaintiff is informed and believes, and on that basis alleges, that Donald Clark

3    ("Clark") is, and at all times relevant herein was, a resident of Clark County, Nevada.

4        4.    Plaintiff is unaware of the true names and legal capacities, whether individual,

5    corporate, associate, or otherwise, of the Defendants sued herein as DOES I through X and ROE

6    BUSINESS ENTITIES XI through XX, inclusive, and therefore sues said Defendants by their

7    fictitious names.  Plaintiff prays leave to insert said Defendants' true names and legal capacities

8    when ascertained.  Plaintiff is informed and believes, and on that basis alleges, that each of the

9    Defendants designated herein as a DOE or a ROE is in some way legally responsible and liable

10    for the events referred to herein and proximately caused the damages alleged herein.

11                **JURISDICTION AND VENUE**

12        5.    Pursuant to 28 U.S.C § 1332, the Court has original jurisdiction over this action

13    because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest

14    and costs, and is between citizens of different States.

15        6.    Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court

16    for the District of Nevada because a substantial part of the events or omissions giving rise to

17    this action occurred, or a substantial part of the property that is the subject of this action is

18    situated, in Washoe County, Nevada.

19            **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

20        7.    This action involves the real property commonly known as 5444 Spanish Moss

21    Court, Sparks, Nevada 89436, and more particularly described as:

22        Lot 84 of VISTA RIDGE UNIT 2C, according to the map thereof, filed in the
        office of the County Recorder of Washoe County, State of Nevada, on June 3,
23        1999, as File No. 2347211, of Official Records and as Tract Map No. 3700.

24        EXCEPTING THEREFROM all minerals, oil, gas, petroleum, other hydrocarbon
        substances and all geothermal energy sources in or under or which may be
25        produced from the within-described land, which lie below plane parallel to and
        one hundred (100) feet from the surface of the within-described land, for the
26        purpose of prospecting, exploration, development, production, or extraction of
        said substances shall have no right to enter the surface of the within-described
27        land nor to use said land above said plane parallel to and one hundred (100) feet
        below the surface of such land, as reserved in a Deed recorded December 31,
28        2002, Document No. 2784118, Official Records, Washoe County.

**Fidelity National
Law Group**
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

Page 2 of 14

1    Washoe County, Nevada, Assessor's Parcel No. ("APN"): 518-643-13 (hereinafter, the
2    "Property").

3    　　　　8.    On or about September 28, 2018, Clark acquired title to the Property through a
4    Grant, Bargain and Sale Deed that was recorded as Document No.: 4854697 of the Official
5    Records of Washoe County, Nevada.  A true and correct copy of the recorded Grant, Bargain
6    and Sale Deed is attached hereto as **Exhibit 1**.

7    　　　　9.    On or about November 25, 2021, Plaintiff entered into a Residential Offer and
8    Acceptance Agreement ("Purchase Agreement") with Clark to purchase the Property from him
9    for $560,000.00 (the "Sale").  A true and correct copy of the Purchase Agreement is attached
10    hereto as **Exhibit 2**.

11    　　　　10.    An escrow ("Escrow") was subsequently opened in connection with the Sale.

12    　　　　11.    During the Escrow, Clark was required to complete an Owner's Affidavit
13    disclosing information regarding the Property, including any:

14    　　　　Debts or Liens:  … (a) loans; (b) actions or proceedings relating to the above
        described property in any State or Federal Court in the United States; (c) State or
15    　　　　Federal Judgments or any Federal Liens of any kind or nature whatever which
        now constitutes a lien or charge upon the subject real property; (d) unrecorded
16    　　　　liens, mortgages, tax liens; or (e) other estate liens on the above described
        property.
17    　　　　….
        Off-Record Matters:  …unrecorded judgments, liens, mortgages or other claims
18    　　　　against the above property.

19    A true and correct copy of the Owner's Affidavit is attached hereto as **Exhibit 3**.

20    　　　　12.    Clark completed and executed the Owner's Affidavit on or about November 7,
21    2021, wherein he stated "None" as to any of the matters listed above.  *See id.*

22    　　　　13.    In the affidavit, Clark expressly acknowledged that the participants in the
23    transaction were "relying upon the representations in this affidavit as being true and correct and
24    that the transaction would not be consummated without this affidavit being executed."  *See id.*

25    　　　　14.    The Sale closed on or about December 17, 2021.  Plaintiff paid Clark the
26    purchase price of $560,000.00 for the Property, and Clark conveyed title to the Property to
27    Plaintiff through a Grant, Bargain, Sale Deed that was recorded as Document No.: 5259773 of
28    the Official Records of Washoe County, Nevada.  A true and correct copy of the recorded

**Fidelity National
Law Group**
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

Page 3 of 14

Grant, Bargain, Sale Deed is attached hereto as **Exhibit 4**.

15.    Thereafter, Plaintiff received notice from Pawnee that it holds a Default Judgment against Clark which was recorded on April 9, 2021, as Document No.: 5164473 of the Official Records of Washoe County, Nevada (the "April 2021 Recording").  A true and correct copy of the April 2021 Recording is attached hereto as **Exhibit 5**.

16.    The Default Judgment provides for "a judgment total of $88,941.02 with 18% contractual interest accruing on the total … until the judgment is satisfied."  *See id.*

17.    Pawnee claims that by virtue of the April 2021 Recording, the Default Judgment attached to the Property as a lien as of April 9, 2021.

18.    Plaintiff disputes Pawnee's claim because the recording does not comply with Nevada law regarding the creation of a lien on real property.

19.    Specifically, NRS 17.150 governs the creation of judgment liens on real property.  It provides in relevant part:

> NRS 17.150    Docketing of judgments of state and federal courts; recording of transcripts, abstracts and copies of judgments; liens on real property; duration of liens; *affidavit required of judgment creditor who records judgment or decree*. [Effective through December 31, 2022.]
> ….
> 2.    A transcript of the original docket or an abstract or copy of any judgment or decree of a district court of the State of Nevada or the District Court or other court of the United States in and for the District of Nevada, the enforcement of which has not been stayed on appeal, certified by the clerk of the court where the judgment or decree was rendered, may be recorded in the office of the county recorder in any county, and when so recorded it becomes a lien upon all the real property of the judgment debtor not exempt from execution in that county, owned by the judgment debtor at the time, or which the judgment debtor may afterward acquire, until the lien expires.  The lien continues for 6 years after the date the judgment or decree was docketed, and is continued each time the judgment or decree is renewed….
>
> 3.    The abstract described in subsection 2 must contain the:
>
> (a)    Title of the court and the title and number of the action;
>
> (b)    Date of entry of the judgment or decree;
>
> (c)    Names of the judgment debtor and judgment creditor;
>
> (d)    Amount of the judgment or decree; and
>
> (e)    Location where the judgment or decree is entered in the minutes

Fidelity National
Law Group
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

Page 4 of 14

or judgment docket.

4.      In addition to recording the information described in subsection 2, a judgment creditor who records a judgment or decree for the purpose of creating a lien upon the real property of the judgment debtor pursuant to subsection 2 ***shall*** record at that time an affidavit of judgment stating:

(a)      The name and address of the judgment debtor;

(b)      If the judgment debtor is a natural person:

(1)      The last four digits of the judgment debtor's driver's license number or identification card number and the state of issuance; or

(2)      The last four digits of the judgment debtor's social security number;

(c)      ***If the lien is against real property which the judgment debtor owns at the time the affidavit of judgment is recorded, the assessor's parcel number and the address of the real property and a statement that the judgment creditor has confirmed that the judgment debtor is the legal owner of that real property***; and

….

All information included in an affidavit of judgment recorded pursuant to this subsection must be based on the personal knowledge of the affiant, and not upon information and belief.

(Emphasis added).

20.      The April 2021 Recording did not create a lien on the Property because Pawnee failed to record the affidavit of judgment mandated by NRS 17.150(4).

21.      Further, the recording did not identify any information regarding the Property, such as its APN, and it identified the judgment debtor as "Donald Clark, Jr.," rather than "Donald Clark" as he was known in the Sale.  *See* Exhibit 5.

22.      Plaintiff, therefore, had no notice that the recording pertained to the same Donald Clark as in the Sale.

23.      Under Nevada law, a bona fide purchaser for value who acquires real property without notice of another's asserted interest in the property takes the property free and clear of such unknown interest.

24.      The elements of bona fide purchase are good faith, payment of value, and no actual or constructive notice of another's interest.

25.      Plaintiff qualifies as a bona fide purchaser because it purchased the Property in

Fidelity National
Law Group
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

Page 5 of 14

1   good faith, for a valuable consideration, and without actual or constructive notice of Pawnee's

2   claimed interest in the Property.

3          26.     Realizing its mistake, Pawnee subsequently caused another copy of the Default

4   Judgment to be recorded on October 20, 2022, as Document No.: 5340478 of the Official

5   Records of Washoe County, Nevada (the "October 2022 Recording").  A true and correct copy

6   of the October 2022 Recording is attached hereto as **Exhibit 6**.

7          27.     The October 2022 Recording is accompanied by a Declaration of Judgment by

8   Pawnee's attorney.  *See id.*

9          28.     While the October 2022 Recording may arguably create a lien on all the real

10  property owned by Clark at the time of the recording, or which Clark may subsequently acquire,

11  it did not create a lien on the Property because Clark no longer owned the Property at that time.

12         29.     Despite the clear mandates of NRS 17.150, and its failure to comply with those

13  mandates, Pawnee insists that the April 2021 Recording created a lien on the Property.

14         30.     Pawnee has since threatened to commence foreclosure of the Property.

15                          **FIRST CLAIM FOR RELIEF**

16                  **(Declaratory Judgment/Quiet Title – Pawnee)**

17         31.     Plaintiff repeats, realleges and incorporates by reference each and every

18  allegation contained in Paragraphs 1 through 30 as though fully set forth herein.

19         32.     Plaintiff acquired ownership of the Property through a Grant, Bargain, Sale Deed

20  that was recorded on December 17, 2021, as Document No.: 5259773 of the Official Records of

21  Washoe County, Nevada.

22         33.     Pawnee claims a judgment lien on the Property by virtue of the April 2021

23  Recording of the Default Judgment against former-owner Clark.

24         34.     Plaintiff disputes Pawnee's claim because the recording did not comply with

25  Nevada law regarding the creation of a lien on real property; specifically, Pawnee failed to

26  record the affidavit of judgment mandated by NRS 17.150(4).

27         35.     Further, the recording did not identify any information regarding the Property,

28  such as its APN, and it identified the judgment debtor as "Donald Clark, Jr.," rather than

**Fidelity National**
**Law Group**
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

Page 6 of 14

"Donald Clark" as he was known in the Sale.  *See* Exhibit 5.

36.    Plaintiff, therefore, had no notice that the recording pertained to the same Donald Clark as in the Sale and it qualifies as a bona fide purchaser who took title to the Property free and clear of Pawnee's claimed interest.

37.    A justiciable controversy exists between Plaintiff and Pawnee pursuant to the Uniform Declaratory Judgment Act NRS 30.010, *et seq*. and NRS 40.010.  Such a controversy exists where a claim of right is asserted against one who has an interest in contesting the claim of right.

38.    Plaintiff has an interest in prosecuting this claim.  Its interest is adverse to Pawnee who asserts a lien interest in the Property.  The issue is ripe for determination.

39.    Accordingly, Plaintiff seeks a judgment declaring that:  (1) the April 2021 Recording did not create a lien on the Property because Pawnee failed to record the affidavit of judgment mandated by NRS 17.150(4); (2) the October 2022 Recording did not create a lien on the Property because Clark did not own the Property at the time of the recording; and (3) Pawnee has no interest in the Property whatsoever by virtue of the Default Judgment.

40.    Alternatively, Plaintiff seeks a judgment declaring that it is a bona fide purchaser who took title to the Property free and clear of Pawnee's claimed interest.

41.    Plaintiff has been required to retain legal counsel and incur legal fees and costs in connection with the prosecution of this action and is, therefore, entitled to recover reasonable attorneys' fees and costs from Pawnee.

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing – Clark)

42.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 41 as though fully set forth herein.

43.    As a matter of law, the Purchase Agreement contains an implied covenant on Clark's part to act in good faith and deal fairly with Plaintiff in connection with all aspects of the parties' performance.

Fidelity National
Law Group
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

Page 7 of 14

44.     All conditions precedent to the performance of Clark's duties and obligations arising out of or in conjunction with the Purchase Agreements have occurred or have been excused or otherwise satisfied.

45.     Clark breached the covenant of good faith and fair dealing contained in the Purchase Agreement by misrepresenting, failing to disclose, omitting from disclosing, concealing and/or suppressing material information concerning the Default Judgment and pursuing a self-serving course of action that was unfaithful to the purpose of the agreement and that deprived Plaintiff of its justified expectations thereunder.

46.     As a direct and proximate result of Clark's bad faith, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), all in a sum to be determined according to proof at the time of trial.

47.     As a direct and proximate result of Clark's bad faith, Plaintiff has been required to retain legal counsel and incur legal fees and costs in connection with the prosecution of this action and is, therefore, entitled to recover reasonable attorneys' fees and costs from Clark.

**THIRD CLAIM FOR RELIEF**

**(In the Alternative, Unjust Enrichment – Clark)**

48.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 47 as though fully set forth herein.

49.     Plaintiff conferred a benefit on Clark by paying him $560,000.00 in exchange for marketable title to the Property.

50.     Clark appreciated, accepted, and retained the benefit conferred upon it by Plaintiff.

51.     Clark, however, failed to convey marketable title to the Property to Plaintiff due to Pawnee's claimed interest in the Property.

52.     Under the foregoing circumstances, Clark has been unjustly enriched at Plaintiff's expense.

Fidelity National
Law Group
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

Page 8 of 14

53.     As a direct and proximate result of Clark's conduct, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), all in a sum to be determined according to proof at the time of trial.

54.     As a direct and proximate result of Clark's conduct, Plaintiff has been required to retain legal counsel and incur legal fees and costs in connection with the prosecution of this action and is, therefore, entitled to recover reasonable attorneys' fees and costs from Clark.

## FOURTH CLAIM FOR RELIEF

### (Breach of Warranty – Clark)

55.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 54 as though fully set forth herein.

56.     Pursuant to NRS 111.170, the Grant, Bargain, Sale Deed whereby Clark conveyed title to the Property to Plaintiff contains various express covenants, including:

(b)     That the real property is, at the time of the execution of the conveyance, free from encumbrances, done, made or suffered by the grantor, or any person claiming under the grantor.

57.     "Such covenants may be sued upon in the same manner as if they had been expressly inserted in the conveyance." *See id.*

58.     Given Pawnee's claimed interest in the Property, Clark breached the covenants contained in the Grant, Bargain, Sale Deed whereby he conveyed title to the Property to Plaintiff.

59.     As a direct and proximate result of Clark's breach, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), all in a sum to be determined according to proof at the time of trial.

60.     As a direct and proximate result of Clark's breach, Plaintiff has been required to retain legal counsel and incur legal fees and costs in connection with the prosecution of this action and is, therefore, entitled to recover reasonable attorneys' fees and costs from Clark.

/ / /

/ / /

/ / /

Fidelity National
Law Group
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

Page 9 of 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIFTH CLAIM FOR RELIEF

### (Fraudulent Concealment – Clark)

61.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 60 as though fully set forth herein.

62.     Prior to and in selling the Property to Plaintiff, Clark failed to disclose, omitted from disclosing, concealed and/or suppressed from Plaintiff the Default Judgment that Pawnee claims is a lien on the Property.

63.     Instead, through the Owner's Affidavit, Clark affirmatively represented to Plaintiff that there was no such interest in the parcel.  *See* Exhibit 3.

64.     This undisclosed, omitted, concealed and/or suppressed information was material to Plaintiff because it affects marketable title to the Property.

65.     Clark was under a duty to disclose this information because the Owner's Affidavit expressly required disclosure of such information.

66.     Clark intentionally failed to disclose, omitted from disclosing, concealed and/or suppressed the Default Judgment in order to induce Plaintiff to purchase the Property for the purchase price.

67.     Plaintiff was not aware of the undisclosed, omitted, concealed and/or suppressed information and justifiably relied upon Clark's nondisclosure, omission, concealment and/or suppression in purchasing the Property.

68.     Had Plaintiff known the undisclosed, omitted, concealed and/or suppressed information, it would not have purchased the Property or would have purchased the Property only after addressing Pawnee's claimed interest.

69.     As a direct and proximate result of Clark's nondisclosure, omission, concealment and/or suppression, and as a direct and proximate result of Plaintiff's reliance on Clark's nondisclosure, omission, concealment and/or suppression, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), all in a sum to be determined according to proof at the time of trial.

**Fidelity National Law Group**
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

70.     As a foreseeable, direct and proximate result of Clark's nondisclosure, omission, concealment and/or suppression, and as a foreseeable, direct and proximate result of Plaintiff's reliance on Clark's nondisclosure, omission, concealment and/or suppression, Plaintiff has been required to retain legal counsel and incur attorney's fees and costs in connection with the prosecution of this action. Plaintiff is entitled to recover its reasonable attorneys' fees and costs incurred as foreseeable damages arising from Clark's tortious conduct. These fees and costs are pleaded as special damages in accordance with Federal Rule of Civil Procedure 9(g).

71.     Clark's conduct as alleged above has been oppressive, fraudulent, malicious, and pursued in conscious disregard for Plaintiff's known rights such that Plaintiff is entitled to recover exemplary and punitive damages from Kolad pursuant to NRS 42.005.

## SIXTH CLAIM FOR RELIEF

### (Fraudulent Misrepresentation – Clark)

72.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 71 as though fully set forth herein.

73.     Prior to and in selling the Property to Plaintiff, Clark failed to disclose, omitted from disclosing, concealed and/or suppressed from Plaintiff the Default Judgment that Pawnee claims is a lien on the Property.

74.     Instead, through the Owner's Affidavit, Clark affirmatively represented to Plaintiff that there was no such interest in the Property. *See* Exhibit 3.

75.     Based upon the Default Judgment against him, Clark knew that his representation in the Owner's Affidavit was false or that he had an insufficient basis for making the representation.

76.     Clark's misrepresentation was material to Plaintiff because it affects marketable title to the Property.

77.     Clark intentionally misrepresented information concerning the Property in order to induce Plaintiff to purchase the Property for the purchase price.

78.     Plaintiff was unaware of the Default Judgment and justifiably relied upon Clark's misrepresentation in purchasing the Property.

Fidelity National
Law Group
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

Page 11 of 14

79.     Had Plaintiff known of the Default Judgment, it would not have purchased the Property or would have purchased the Property only after addressing Pawnee's claimed interest by virtue of the Default Judgment.

80.     As a direct and proximate result of Clark's misrepresentation, and as a direct and proximate result of Plaintiff's reliance on the misrepresentation, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), all in a sum to be determined according to proof at the time of trial.

81.     As a foreseeable, direct, and proximate result of Clark's misrepresentation, and as a foreseeable, direct and proximate result of Plaintiff's reliance on the misrepresentation, Plaintiff has been required to retain legal counsel and incur attorney's fees and costs in connection with the prosecution of this action.  Plaintiff is entitled to recover its reasonable attorneys' fees and costs incurred as foreseeable damages arising from Clark's tortious conduct. These fees and costs are pleaded as special damages in accordance with Federal Rule of Civil Procedure 9(g).

82.     Clark's conduct as alleged above has been oppressive, fraudulent, malicious, and pursued in conscious disregard for Plaintiff's known rights such that Plaintiff is entitled to recover exemplary and punitive damages from Clark pursuant to NRS 42.005.

## SEVENTH CLAIM FOR RELIEF

### (Negligent Misrepresentation – Clark)

83.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 82 as though fully set forth herein.

84.     During the Escrow for the Sale, Clark was required to complete an Owner's Affidavit disclosing matters such as the Default Judgment.  *See* Exhibit 3.

85.     Clark misrepresented, failed to disclose, omitted from disclosing, concealed and/or suppressed the Default Judgment from Plaintiff, due to Clark's failure to exercise reasonable care or competence in obtaining or communicating the information.

86.     The misrepresented, undisclosed, omitted, concealed and/or suppressed information was material and Clark was under a duty to disclose the information to Plaintiff.

Fidelity National
Law Group
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

Page 12 of 14

87.     At the time of the foregoing misrepresentation, nondisclosure, omission, concealment and/or suppression, Clark knew or had reason to know that the misrepresentation, nondisclosure, omission, concealment and/or suppression would have the effect of reasonably and justifiably inducing Plaintiff to purchase the Property.

88.     Indeed, Clark expressly acknowledged in the Owner's Affidavit that the participants in the transaction were "relying upon the representations in this affidavit as being true and correct and that the transaction would not be consummated without this affidavit being executed." *See id.*

89.     In reliance on Clark's misrepresentation, nondisclosure, omission, concealment and/or suppression, Plaintiff reasonably and justifiably proceeded with purchasing the Property.

90.     As a direct and proximate result of Clark's misrepresentation, nondisclosure, omission, concealment and/or suppression, and as a direct and proximate result of Plaintiff's reliance on the misrepresentation, nondisclosure, omission, concealment and/or suppression, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), all in a sum to be determined according to proof at the time of trial.

91.     As a foreseeable, direct, and proximate result of Clark's misrepresentation, nondisclosure, omission, concealment and/or suppression, and as a foreseeable, direct, and proximate result of Plaintiff's reliance on the misrepresentation, nondisclosure, omission, concealment and/or suppression, Plaintiff has been required to retain legal counsel and incur attorney's fees and costs in connection with the prosecution of this action.  Plaintiff is entitled to recover its reasonable attorneys' fees and costs incurred as foreseeable damages arising from Clark's tortious conduct.  These fees and costs are pleaded as special damages in accordance with Federal Rule of Civil Procedure 9(g)

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For a judgment declaring that:  (1) the April 2021 Recording did not create a lien on the Property because Pawnee failed to record the affidavit of judgment mandated by NRS 17.150(4); (2) the October 2022 Recording did not create a lien on the Property because Clark

1   did not own the Property at the time of the recording; and (3) that Pawnee has no interest in the

2   Property whatsoever by virtue of the Default Judgment;

3        2.        Alternatively, for a judgment declaring that Plaintiff is a bona fide purchaser

4   who took title to the Property free and clear of Pawnee's claimed interest.

5        3.        For compensatory damages in excess of $75,000.00;

6        4.        For punitive damages in excess of $75,000.00;

7        5.        For an award of attorney's fees and costs of litigation; and

8        6.        For any and all such other relief as the Court deems just and proper.

9        DATED this 26th day of April, 2023.

10                               FIDELITY NATIONAL LAW GROUP

11

12                         */s/ Christina H. Wang*

13                         CHRISTINA H. WANG, ESQ.
                            Nevada Bar No. 9713

14                         8363 W. Sunset Road, Suite 120
                            Las Vegas, Nevada 89113

15                         *Attorneys for Plaintiff Sphere, LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

Fidelity National
Law Group
8363 W. Sunset Rd., Suite 120
Las Vegas, NV 89113
(702) 667-3000

Page 14 of 14

# EXHIBIT 1

A.P.N.:        518-643-13

File No:       121-2550450 (LC)

R.P.T.T.:      $1,599.00

DOC #4854697

09/28/2018 02:25:07 PM
Electronic Recording Requested By
FIRST AMERICAN TITLE RENO
Washoe County Recorder
Lawrence R. Burtness
Fee: $41.00  RPTT: $1599.00
Page 1 of 3

When Recorded Mail To:  Mail Tax Statements To:
Donald Clark
5444 Spanish Moss Court
Sparks, NV 89436

## *GRANT, BARGAIN and SALE DEED*

*FOR A VALUABLE CONSIDERATION*, receipt of which is hereby acknowledged,

Garth W. Best and Cheryl A. Best, husband and wife as joint tenants with right of survivorship

do(es) hereby *GRANT, BARGAIN and SELL* to

Donald Clark, an unmarried man

the real property situate in the County of Washoe, State of Nevada, described as follows:

**LOT 84 OF VISTA RIDGE UNIT 2C, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON JUNE 3, 1999, AS FILE NO. 2347211, OF OFFICIAL RECORDS AND AS TRACT MAP NO. 3700.**

**EXCEPTING THEREFROM ALL MINERALS, OIL, GAS, PETROLEUM, OTHER HYDROCARBON SUBSTANCES AND ALL GEOTHERMAL ENERGY SOURCES IN OR UNDER OR WHICH MAY BE PRODUCED FROM THE WITHIN -DESCRIBED LAND, WHICH LIE BELOW PLANE PARALLEL TO AND ONE HUNDRED (100) FEET FROM THE SURFACE OF THE WITHIN -DESCRIBED LAND, FOR THE PURPOSE OF PROSPECTING, EXPLORATION, DEVELOPMENT, PRODUCTION, OR EXTRACTION OF SAID SUBSTANCES SHALL HAVE NO RIGHT TO ENTER THE SURFACE OF THE WITHIN - DESCRIBED LAND NOR TO USE SAID LAND ABOVE SAID PLANE PARALLEL TO AND ONE HUNDRED (100) FEET BELOW THE SURFACE OF SUCH LAND, AS RESERVED IN A DEED RECORDED DECEMBER 31, 2002, DOCUMENT NO. 2784118, OFFICIAL RECORDS, WASHOE COUNTY.**

Subject to

1.  All general and special taxes for the current fiscal year.

2. Covenants, Conditions, Restrictions, Reservations, Rights, Rights of Way and Easements now of record.

   *TOGETHER* with all tenements, hereditaments and appurtenances, including easements and water rights, if any, thereto belonging or appertaining, and any reversions, remainders, rents, issues or profits thereof.

   Date: 09/25/2018



Garth W. Best

Garth W. Best

Cheryl A. Best

STATE OF     **NEVADA**          )
                                 : **ss.**
COUNTY OF    **WASHOE**          )

This instrument was acknowledged before me on ___9-26-18_____ by
**Garth W. Best and Cheryl A. Best.**

Notary Public
(My commission expires: __9-26-18___)  3-12-19

LORI J. CALLISON
Notary Public - State of Nevada
Appointment Recorded in Churchill County
No: 15-1098-4 - Expires March 12, 2019

This Notary Acknowledgement is attached to that certain Grant, Bargain Sale Deed dated
**September 25, 2018** under Escrow No. **121-2550450.**

# EXHIBIT 2

AuthentiSign ID: EC1FF698-FBF3-4E08-9BEC-9157BF05D811

# RESIDENTIAL OFFER AND ACCEPTANCE AGREEMENT

 

1 RECEIVED FROM Sphere, LLC _____
2 _____ (BUYER),
3 the amount set forth below as the EARNEST MONEY DEPOSIT on account of the PURCHASE PRICE OF
4 $ 560000 _____ for the real property commonly described as
5 5444 Spanish Moss Ct _____, situated in the ☑ City OR ☐ Unincorporated Area of
6 Sparks _____ County of Washoe _____, State of Nevada, APN 51864313 _____ (Property)
7 legal description shall be supplied in escrow. BUYER ☐ does, ☑ does not intend to occupy the Property as a residence.
8
9 **EARNEST MONEY DEPOSIT (EMD)**    Evidenced by ☑ Check or ☐ other _____
10 payable to Ticor Title Company _____, held uncashed until acceptance and then deposited
11 within one (1) business day of Acceptance with Ticor Title Company _____.    $ 5000
12 Authorized escrow holder to be selected by ☐ BUYER ☑ SELLER.
13
14 **BALANCE OF CASH DOWN PAYMENT** (not including closing costs)    $ 555000
15 Source of down payment Proceeds from 1031 Exchange (already closed) _____.
16
17 **CASH PURCHASE**    BUYER to provide evidence, satisfactory to SELLER, of sufficient cash
18 available to complete this purchase within 1 _____ days of Acceptance.
19
20 **NEW FIRST LOAN: TYPE** ☐ Conventional ☐ FHA ☐ VA ☐ Rural ☐ Private    $ 0
21 ☐ Fixed Rate for _____ years. Interest not to exceed _____%.
22 ☐ Adjustable Rate for _____ years. Initial Interest not to exceed _____% maximum lifetime rate
23 not to exceed _____%.
24
25 **NEW SECOND LOAN: TYPE** ☐ Conventional ☐ Private
26 ☐ Other _____    $ 0
27 ☐ Fixed Rate for _____ years. Interest not to exceed _____%.
28 ☐ Adjustable Rate for _____ years. Initial Interest not to exceed _____% maximum lifetime rate
29 not to exceed _____%.
30
31 **BUYER** to lock loan terms within _____ days of Acceptance or BUYER agrees to pay prevailing rates.
32
33 **BUYER** to pay discount points not to exceed _____%. SELLER to pay discount points not to
34 exceed _____%. Any reduction in discount points at closing to be allocated proportionately.
35 Loan origination fee not to exceed _____% paid by ☐ BUYER ☐ SELLER.
36 **SELLER** agrees to pay up to $ _____ in loan fees that BUYER cannot pay pursuant
37 to FHA or VA regulation.
38 All remaining loan fees shall be paid as required by law, ordinance and/or regulation.
39
40 **OTHER** (Specify in Additional Terms and Conditions or Financing Addendum):    $ 0
41
42 **TOTAL PURCHASE PRICE** in the sum of (not including closing costs):    $ 560000
43
44 **CLOSING**    Close of Escrow (COE) to be on 12/17/2021 _____, Unless otherwise agreed upon
45 in writing, COE shall not change from the originally agreed upon date. The parties shall deposit, with the authorized escrow
46 holder, all funds and instruments necessary to complete the transaction in accordance with the terms in this Agreement.

Address 5444 Spanish Moss Ct, Sparks, NV 89436

Buyer [RWR] /[ ] /[ ] and Seller [ ] /[ ] /[ ] I have read this page.
ROA Page 1 of 10    This copyright protected form was created by members of RSAR and SNR.    RSAR© 01/21
ROA 1/10

Authentisign ID: EC1FF698-FBF8-4E08-68EC-01579F05D811

1   **DEFINITIONS**    BROKER means cooperating Brokers and all Licensees. DAYS means calendar days unless otherwise
2 specified. In computing any period of time prescribed under this Agreement, the day of the event from which the designated
3 period of time begins to run shall not be included. The last day of the period so computed shall be included. BUSINESS
4 DAY means a day other than Saturday, Sunday, or legal holiday recognized in the state of Nevada. ACCEPTANCE or
5 DATE OF ACCEPTANCE means the date on which this Agreement and any other counter offers are fully executed and
6 delivered. DELIVERY or RECEIPT means personal delivery, transmission by Facsimile (Fax), electronic delivery, or
7 certified mail to BUYER, SELLER, Broker, or other representative. In the event of Fax, delivery shall be deemed to have
8 occurred at the time noted on the confirmation sheet generated by the sender's Fax. In the event of certified mail, delivery
9 and receipt shall be deemed to have occurred three (3) days following the date of mailing evidenced by the postmark on the
10 envelope containing the delivered material. In the event of electronic delivery, delivery and receipt shall be deemed to have
11 occurred as set forth in Nevada Revised Statutes (NRS) 719.320.
12
13   **COUNTERPARTS AND SIGNATURES**    BUYER and SELLER acknowledge and agree this Agreement may be
14 executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the
15 same instrument. BUYER and SELLER agree that this Agreement may be conducted by electronic delivery, and signatures
16 so transmitted shall be acceptable for all purposes. Signatures transmitted by electronic delivery shall be deemed original
17 signatures.
18
19   **LOAN APPLICATION REQUIREMENT (BUYER initial required if applying for a Loan)**
20 [   ] / [   ] / [   ] / [   ]    **Within five (5) business days** of Acceptance, BUYER agrees to (1) submit a
21 completed loan application, including all documentation, to a lender of BUYER's choice and (2) furnish a pre-approval letter
22 to SELLER based upon a standard factual credit report, acceptable debt to income ratios and sufficient funds to complete the
23 transaction and (3) agrees to authorize ordering of the appraisal. If BUYER fails to complete any of the above requirements,
24 BUYER is in default and SELLER may terminate this Agreement **within two (2) business days** and EMD shall be returned
25 to BUYER less BUYER incurred expenses.
26
27   **LOAN CONTINGENCY REMOVAL (BUYER Initial Required)**
28         **Included**                  **Waived**
29 [  ] / [  ] / [  ] / [  ]     [ *RWR* ] / [  ] / [  ] / [  ]    Within _____ days of
30 Acceptance, BUYER shall remove the loan contingency.
31
32 BUYER consents to the lender's release of loan status and conditions of approval to SELLER and Brokers. SELLER has no
33 obligation to cooperate with BUYER's efforts to obtain any financing other than as specified in this Agreement.
34
35   **APPRAISAL CONTINGENCY (BUYER Initial Required)**
36         **Included**                  **Waived**
37 [  ] / [  ] / [  ] / [  ]     [ *RWR* ] / [  ] / [  ]    The Appraisal fee is to be paid
38 by ☐ BUYER ☐ SELLER ☐ split equally ☐ other _____.
39 If the appraisal does not meet or exceed the purchase price or there are appraisal conditions, BUYER has the right to
40 exercise one of the following options within the contingency period:
41     (A) proceed with the transaction without regard to the amount of the appraised valuation or appraisal conditions; or
42     (B) renegotiate with the SELLER, provided that if such renegotiation is not successful within 3 business days, then either
43     party may terminate this Agreement upon written notice and EMD shall be returned to BUYER less BUYER incurred
44     expenses; or
45     (C) terminate this Agreement.
46 Parties acknowledge that FHA and VA guidelines may supersede this provision.
47 Any required appraisal re-inspections shall be paid by ☐ BUYER ☐ SELLER ☐ split equally ☐ other _____.
48
49   **APPRAISAL CONTINGENCY REMOVAL**    Within _____ days of Acceptance, BUYER shall remove the appraisal
50 contingency.

Address 5444 Spanish Moss Ct, Sparks, NV 89436 _____

Buyer [ *RWR* ] / [  ] / [  ] / [  ] and Seller [  ] / [  ] / [  ] / [  ] have read this page.
ROA Page 2 of 10        This copyright protected form was created by members of RSAR and SNR.     RSAR® 01/21
                                                                ROA 2/10

1 **CONTINGENT ON SALE AND CONVEYANCE OF OTHER PROPERTY**
2 ☑ This Agreement **IS NOT** contingent upon the sale and conveyance of BUYER's property;
3 **OR**
4 ☐ This Agreement **IS** contingent upon the sale and conveyance of BUYER's property described as
5 _____. **BUYER to select option A or B.**
6   A.   ☐ BUYER's property is in escrow scheduled to close on or before _____. The sale of
7        BUYER's property is **not** contingent on the sale and conveyance of a third party's property.
8        **OR**
9        ☐ BUYER's property is in escrow scheduled to close on or before _____. The sale of
10       BUYER's property **is** contingent on the sale and conveyance of a third party's property.
11  B.   ☐ BUYER's property is currently listed in the MLS System by a REALTOR®.
12       **OR**
13       ☐ BUYER's property shall be listed within _____ days in the MLS System by a REALTOR®.
14       If BUYER's property does not obtain an accepted offer within _____ days of this Acceptance with a
15       scheduled closing on or before _____, then this Agreement shall terminate unless
16       BUYER and SELLER otherwise agree in writing. BUYER shall not accept an offer contingent on the sale of
17       a third party's property without SELLER's written approval. If BUYER accepts an offer contingent on the
18       sale of a third party's property without SELLER's written approval, SELLER may terminate this Agreement
19       and retain BUYER's EMD.
20
21 SELLER shall have the right to continue to offer this Property for sale and accept written backup offers only, subject to
22 BUYER's rights under this Agreement. If escrow on BUYER's property does not close on or before _____,
23 this Agreement shall terminate, unless BUYER and SELLER otherwise agree in writing, and the parties agree to cancel the
24 escrow and return the EMD to BUYER less BUYER incurred expenses.
25
26 BUYER shall provide information regarding the listing, the escrow, and related escrows for the contingent property,
27 including but not limited to, the closing date, loan status, inspections, and all additional contingencies on BUYER's property
28 within _____ days of each event. BUYER authorizes SELLER and Brokers to obtain updates on BUYER's listing or
29 escrow.
30
31 If any of the contingencies in the Contingent on Sale and Conveyance of Other Property section are not satisfied, SELLER
32 reserves the right to terminate this Agreement. If SELLER terminates this Agreement, the parties agree to cancel the escrow
33 and return the EMD to BUYER less BUYER incurred expenses.
34
35 **COMMON-INTEREST COMMUNITY DISCLOSURE**
36 The Property ☑ is or ☐ is not located in a Common-Interest Community (CIC).
37 If so, complete the following:
38 SELLER shall provide, at SELLER's expense, the (CIC) documents ("Resale Package") as required by NRS 116.4109.
39 SELLER shall order the Resale Package **within five (5) days of Acceptance** and deliver it to BUYER upon receipt.
40 CIC Association transfer fees paid by ☐ BUYER ☑ SELLER ☐ split equally ☐ other _____
41 CIC Association set up fees paid by ☑ BUYER ☐ SELLER ☐ split equally ☐ other _____
42 CIC Capital Contribution fees paid by ☐ BUYER ☐ SELLER ☑ split equally ☐ other _____
43 Other CIC Association fees related to the transfer of the (CIC) shall be paid by ☐ BUYER ☐ SELLER ☑ split equally
44 ☐ other _____
45 The amount of any delinquent assessments, including penalties, attorney's fees, and other charges provided for in the
46 management documents shall be paid current by SELLER at COE.
47 Existing assessments levied shall be paid by ☐ BUYER ☑ SELLER ☐ split equally ☐ other _____
48 CIC assessments levied, but not yet due, shall be paid by ☑ BUYER ☐ SELLER ☐ split equally ☐ other _____
49 BUYER shall have five (5) days from receipt of the Resale Package to review it. If BUYER does not approve the Resale
50 Package, then written notice to cancel must be given **within that same five (5) day period.**

Address 5444 Spanish Moss Ct, Sparks, NV 89436

Buyer [ RWR ] / [     ] and Seller [ ✗ ] / [     ] I have read this page.
ROA Page 3 of 10    This copyright protected form was created by members of RSAR and SNR.    RSAR® 01/21
                                                                                          ROA 3/10

AuthentiSign ID: EC1FF698-FBF8-4E08-98EC-01579F05D811

1  **AREA RECREATION PRIVILEGES AND RULES**    SELLER shall comply with CIC (including area recreation
2  privileges) rules regarding the return or transfer of any passes, identification cards, or keys for access to the CIC facilities
3  and general improvements. BUYER shall become familiar with the current CIC facilities and general improvement policies
4  regarding recreation privileges and associated costs prior to COE.
5
6  **VESTED TITLE**    Title shall vest as designated in the escrow instructions.
7
8  **EXAMINATION OF TITLE**    In addition to any encumbrances referred to in this Agreement, BUYER shall take title to
9  the Property subject to: (1) real estate taxes not yet due, and (2) Covenants, Conditions, & Restrictions (CC&Rs), rights of
10 way, and easements of record, if any, that do not materially affect the value or intended use of the Property. **Within two (2)**
11 **business days** of Acceptance, SELLER shall order a preliminary title report, and CC&Rs, if applicable. **Within five (5)**
12 **days** of BUYER's receipt of the preliminary title report and CC&Rs, BUYER's objections shall be delivered to SELLER's
13 Broker within this **five (5) day** period. Should BUYER object to any of the preliminary title report or CC&R's, SELLER
14 shall use due diligence to remove those objections prior to COE. If those objections cannot be removed, BUYER may elect
15 to purchase the Property, subject to the existing objections, or BUYER may elect to terminate all rights and obligations under
16 this Agreement. The EMD shall be returned to BUYER, less BUYER incurred expenses. If SELLER is unwilling or unable
17 to remove BUYER's objections, SELLER shall deliver written notification to BUYER's Broker **within ten (10) days** of
18 receipt.
19
20 **TITLE AND CLOSING COSTS**
21 ☑ BUYER ☑ SELLER ☐ split equally ☐ other _____ shall pay for a (Standard) owner's policy of title
22 insurance.
23 ☐ BUYER ☐ SELLER ☐ split equally ☐ other _____ shall pay for a (Standard) lender's policy of title
24 insurance.
25 BUYER is aware additional coverage policies are available. All costs associated with additional coverage policies to be paid
26 for by ☑ BUYER ☐ SELLER ☐ split equally ☐ other _____.
27 Escrow Fee to be paid by ☐ BUYER ☐ SELLER ☑ split equally ☐ other _____.
28 Transfer Tax(es) to be paid by ☐ BUYER ☐ SELLER ☑ split equally ☐ other _____.
29 All remaining closing costs shall be paid in the customary manner as required by law, ordinance and/or regulation.
30
31 **OMISSIONS FROM ESCROW INSTRUCTIONS**    The omission from the escrow instructions of any provision in this
32 Agreement shall not preclude any party from enforcing that provision. All written representations and warranties shall
33 survive the conveyance of the Property.
34
35 **BONDS AND ASSESSMENTS (Other than CIC)**    In the event there is a bond or assessment with a principal balance or
36 that requires settlement in full prior to COE, it shall be paid by ☑ SELLER ☐ BUYER ☐ assumed by BUYER if allowed
37 ☐ split equally ☐ other _____.
38
39 **PRORATION**    Any and all rents, taxes, interest, homeowner association fees, payments on bonds, assessments and other
40 Property expenses, assumed by BUYER shall be prorated as of the date of recordation of the deed. Security deposits,
41 advance rentals, or considerations involving future lease credits shall be credited to BUYER at COE.
42
43 **REASSESSMENT OF PROPERTY TAX**    BUYER is advised the Property may be reassessed in the future, which may
44 result in a tax increase or a tax decrease.
45
46 **HOME WARRANTY CONTRACT (BUYER Initial Required)**
47 ⌐ ⌐       Included                     Waived
48 [      ]/[    ][    ]/[    ]  [    ]/[    ]/[    ] A home warranty contract shall be
49 selected by ☑ BUYER ☐ SELLER and shall be paid for by ☐ BUYER ☐ SELLER ☐ split equally ☑ other AgentEricR .
50 The home warranty confirmation shall be delivered to escrow and become effective at COE for not less than one year, at a
51 price NOT to exceed $ 500 _____.

Address 5444 Spanish Moss Ct, Sparks, NV 89436

Buyer [ RWR ]/[    ][    ] and Seller [    ]/[    ][    ] have read this page.
ROA Page 4 of 10          This copyright protected form was created by members of RSAR and SNR.          RSAR© 01/21
                                                                                                          ROA 4/10

Authentisign ID: EC1FF698-FBF8-4E08-98EC-01579F05D811

1  **FIXTURES**   All items permanently attached to the Property as of the date of this Agreement including, but not limited to,
2  light fixtures, attached floor coverings, attic fans, central vacuum and related equipment, humidifier systems, drapes/
3  curtains, blinds/shades including rods/hardware, doors and window screens, storm sash, awnings, TV antennas, TV wall
4  mounts, satellite dishes, burglar, fire and smoke alarms and fire sprinklers, built-in pools/spas/saunas and related equipment,
5  solar systems, conforming woodstoves, intercom systems, water softener systems, water and air filtration systems, attached
6  fireplace screens, keyless entries, electric garage door openers with controls, outdoor plants and trees (other than in movable
7  containers), **OTHER** none.
8  _____
9  _____
10 are included in the purchase price, free of liens, **EXCLUDING** no exclusions.
11 _____
12 _____
13
14 **PERSONAL PROPERTY**   The following personal property, on the premises when inspected by BUYER is included in
15 the purchase price, free of liens, with no warranty or value implied: washer, dryer, refrigerator in kitchen, gas range-oven.
16 _____
17 _____
18
19 **SYSTEMS AND MAINTENANCE**   Until possession of the Property is delivered, SELLER shall maintain the Property,
20 including but not limited to, all existing structures, landscaping, grounds, appliances and systems. SELLER agrees to deliver
21 the Property in a neat and clean condition, and remove all debris and personal belongings, **EXCLUDING:** no exclusions.
22 _____
23
24 **OIL AND PROPANE**   Any oil or propane fuel existing at the time of Acceptance, allowing for  normal use up to COE,
25 shall be ☐ purchased by BUYER ☐ included in the purchase price. If the fuel is purchased by BUYER, SELLER shall
26 contact the fuel company to measure the existing fuel **no later than five (5) days** prior to COE. The fuel credit amount shall
27 be submitted to Escrow for credit to SELLER. Buyer is responsible for any fuel contracts after close of escrow.
28
29 **SELLER'S REAL PROPERTY DISCLOSURE FORM (SRPD)**      SELLER shall provide BUYER, **at time of written**
30 **acceptance**, a completed SRPD which, by this reference, shall be incorporated into this Agreement. BUYER shall return an
31 acknowledged copy to SELLER or terminate this Agreement, in writing, **within four (4) business days** of receipt. SELLER
32 is required to disclose any new defects between the time the SRPD is executed and COE.
33
34 **DISCLAIMER**   BUYER understands that the SRPD is for disclosure purposes and is not a substitute for property
35 inspections by experts including, but not limited to, engineers, geologists, architects, general contractors, specialty
36 contractors such as roofing contractors, and pest control operators. BUYER is advised to retain any experts believed
37 appropriate. BUYER understands and acknowledges Brokers cannot warrant the condition of the Property or guarantee all
38 defects have been disclosed by SELLER. BUYER and SELLER acknowledge Brokers shall not investigate the status of
39 permits, location of Property lines, code compliance or any other Property condition.
40
41 **ITEMS NOT ADDRESSED**   Items of general maintenance or cosmetic nature not materially affecting the value, or use of
42 the Property, existing at the time of Acceptance not expressly addressed in this Agreement, are deemed accepted by BUYER.
43
44 **SELLER** agrees to provide reasonable access to the Property to BUYER, and inspectors, for inspections and re-inspections
45 and appraiser. SELLER agrees to have all utilities in service the day of any inspection and until COE. If this transaction fails
46 to close, the parties remain obligated to pay for inspections performed as agreed.

1 **PHYSICAL INSPECTIONS**   BUYER has the right to inspect the Property, order all inspections, and select qualified
2 professionals including, but not limited to, licensed contractors, certified building inspectors, and any other qualified
3 professionals to inspect the Property.
4 BUYER shall indicate inspections to be included or waived in the list below. The following is not a comprehensive list of
5 possible inspections; therefore, BUYER should add any additional inspections necessary to satisfy BUYER under
6 "OTHER."
7 All inspections shall be completed and copies of all inspections shall be provided to BUYER and SELLER at no additional
8 expense
9  ☑ within 17____ days of Acceptance; OR
10  ☐ within _____ days of other contingency: _____
11 Within the time specified above, BUYER shall deliver to SELLER, in writing, one of the following:
12  A. approval of the inspections without requiring any repairs; OR
13  B. approval of the inspections with a Notice of Required Repairs or an Addendum listing all required repairs. SELLER
14   shall respond in writing to BUYER's repair request **within five (5) business days** of delivery; OR
15  C. termination of this Agreement. If BUYER terminates, BUYER is released from any and all obligations to SELLER,
16   and BUYER is entitled to a refund of the EMD, less BUYER incurred expenses.
17 If any inspection is not completed by the deadline, it is waived unless otherwise agreed to in writing. SELLER is   released
18 from liability for the cost of repairs that inspection would have reasonably identified had it been conducted, except as other-
19 wise provided by law.

| 20 INSPECTIONS | Included | Waived | N/A | Paid By | |
|---|---|---|---|---|---|
| 21 PEST INSPECTION | ☐ | ☑ | ☐ | ☐ BUYER | ☐ SELLER |
| 22 HOME INSPECTION | ☑ | ☐ | ☐ | ☑ BUYER | ☐ SELLER |
| 23 HEATING SYSTEM INSPECTION | ☐ | ☑ | ☐ | ☐ BUYER | ☐ SELLER |
| 24 COOLING SYSTEM INSPECTION | ☐ | ☑ | ☐ | ☐ BUYER | ☐ SELLER |
| 25 SURVEY Type _____ | ☐ | ☑ | ☐ | ☐ BUYER | ☐ SELLER |
| 26 WELL QUALITY | ☐ | ☐ | ☑ | ☐ BUYER | ☐ SELLER |
| 27 WELL QUANTITY | ☐ | ☐ | ☑ | ☐ BUYER | ☐ SELLER |
| 28 SEPTIC PUMPING | ☐ | ☐ | ☑ | ☐ BUYER | ☐ SELLER |
| 29 SEPTIC INSPECTION | ☐ | ☐ | ☑ | ☐ BUYER | ☐ SELLER |
| 30 SEPTIC LID LOCATION/REMOVAL | ☐ | ☐ | ☑ | ☐ BUYER | ☐ SELLER |
| 31 FIREPLACE INSPECTION | ☐ | ☑ | ☐ | ☐ BUYER | ☐ SELLER |
| 32 WOOD BURNING DEVICE INSPECTION | ☐ | ☑ | ☐ | ☐ BUYER | ☐ SELLER |
| 33 WOOD BURNING DEVICE CERTIFICATION (if required) ☐ | | ☐ | | ☐ BUYER | ☐ SELLER |

34   Certification requires inspection. (In the event device does not meet all applicable codes and/or laws, the cost of its removal shall
35 be the responsibility of SELLER. Stovepipe to be capped off at the ceiling or fireplace to be restored to working order at
36 SELLER's expense.)

| 37 OIL TANK TEST Type _____ | ☐ | ☐ | ☑ | ☐ BUYER | ☐ SELLER |
|---|---|---|---|---|---|

38  (If oil tank needs to be filled to perform test,   BUYER ☐ shall,   ☑ shall not reimburse SELLER.)

| 39 LEAD BASED PAINT ASSESSMENT OR INSPECTION ☐ | | ☑ | ☐ | ☐ BUYER | ☐ SELLER |
|---|---|---|---|---|---|
| 40 RADON INSPECTION | ☐ | ☑ | ☐ | ☐ BUYER | ☐ SELLER |
| 41 OTHER any recommended by inspector _____ | ☑ | ☐ | ☐ | ☑ BUYER | ☐ SELLER |

42
43 [__RWR__]/[____]/[____]/[____] (BUYER Initials) BUYER affirms the above selections.
44
45 **REPAIRS**   SELLER agrees to pay for and complete repairs, in an amount not to exceed the total sum of
46 $ 0 _____. SELLER understands that BUYER has not yet completed inspections, if any. BUYER reserves
47 the right to request additional repairs (1) identified by the inspections; 2) as allowed by Nevada law for SRPD related
48 disclosures or newly discovered defects; 3) or for repairs indicated on the Appraisal Report. SELLER reserves the right to
49 refuse to complete requested repairs in an amount exceeding the repair limit as indicated above, but understands BUYER
50 may have a right to terminate this Agreement. For any repairs completed a copy of all repair invoices and receipts shall be
51 delivered to BUYER prior to COE. Brokers have no responsibility to assist in the payment of any repairs, corrections or
52 deferred maintenance on the Property.

Address 5444 Spanish Moss Ct, Sparks, NV 89436

Buyer [__RWR__]/[____]/[____] and Seller [____]/[____]/[____] have read this page.
ROA Page 6 of 10      This copyright protected form was created by members of RSAR and SNR.      RSAR® 01/21
ROA 6/10

Authentisign ID: EC1FF698-FBF8-4E08-68EC-01579F05D811

1 **RE-INSPECTIONS (BUYER Initial Required)**
2         Included                                    Waived
3 [      ][      ]/[      ]/[      ][      ]   [ *RWR* ]/[      ]/[      ][      ]   SELLER shall have all agreed
4 upon repairs completed no later than _____ days prior to COE and BUYER shall have the right to re-inspect.
5 Re-inspections shall be paid by ☑ BUYER ☐ SELLER ☐ split equally ☐ other _____.
6
7 [ *RWR* ]/[      ]/[      ][      ]   **SATISFACTION OF CONTINGENCIES (BUYER Initial Required)** All
8 contingencies shall be satisfied according to their terms within the time limits specified, expire according to the time limits
9 specified, or be waived in writing. If BUYER exercises their right to terminate this Agreement under any contingency,
10 BUYER is not in default and is entitled to a refund of the EMD, less BUYER incurred expenses. If a contingency expires, it
11 is waived. BUYER and SELLER shall cooperate in providing written waivers of those contingencies.
12
13 **FINAL WALKTHROUGH**    BUYER shall have the right to a final walkthrough prior to COE.
14
15 **PHYSICAL POSSESSION**    Physical possession of the Property with any keys to Property locks, community mailboxes,
16 alarms, and garage door openers shall be delivered to BUYER ☑ upon recordation of the deed; OR ☐ Short Term
17 Agreement to Occupy After COE; OR ☐ Residential Lease/Rental Agreement.
18
19 **DESTRUCTION OF IMPROVEMENTS**    If the improvements of the Property are destroyed, materially damaged, or
20 found to be materially defective prior to COE, BUYER may terminate this Agreement by written notice delivered to
21 SELLER's Broker, and EMD shall be returned to BUYER less BUYER incurred expenses.
22
23 **LAND USE REGULATION**    BUYER is advised the Property may be subject to the authority of the city, county, state,
24 federal governments, and/or various courts having jurisdiction. These governmental entities, from time to time, have adopted
25 and revised land use and environmental regulations that may apply to the Property. BUYER is advised to research the
26 possible effect of any applicable land use or environmental regulation. Brokers make no representations or warranties
27 regarding the existing permissible uses or future revisions to the land use regulations.
28
29 **ENVIRONMENTAL CONDITIONS**    BUYER is advised the Property may be located in an area found to have special
30 flood hazards as indicated by FEMA, avalanche conditions, freezing temperatures, snow loads, seismic activity and/or
31 wildland fires. It may be necessary to purchase additional insurance in order to obtain a loan for the Property. For further
32 information, consult your lender, insurance carrier, or other appropriate agency.
33
34 **WATER METERS**    BUYER may be required at a future date to incur the cost of installation of a water meter and/or
35 conversion to metered rates.
36
37 **WELLS**    Many factors may affect the performance of a well system. If the Property includes a well, BUYER may be
38 required at some future date to incur the cost of connecting the Property to a public water system.
39
40 **ADDITIONAL FEES**    Some areas may have additional fees or charges for the remediation of water systems.
41
42 **SEPTIC SYSTEMS**    If the Property includes a septic system, BUYER may be required at some future date to incur the
43 cost of connecting the Property's plumbing to a public sewer system.
44 At COE, BUYER assumes all future costs associated with water meters, wells, and septic systems.
45
46 **PRIVATE ROADS**    SELLER shall disclose if the Property shares a common road, access driveway, or right-of-way with
47 another property. If a road maintenance agreement exists, SELLER shall provide the agreement to BUYER.
48
49 **WATER RIGHTS**    Water rights, if any, shall be included with the Property unless specifically excluded by deed or
50 mutual agreement.

Address 5444 Spanish Moss Ct, Sparks, NV 89436

Buyer [ *RWR* ][      ]/[      ][      ] and Seller [ ]/[      ]/[      ][      ] have read this page.
ROA Page 7 of 10          This copyright protected form was created by members of RSAR and SNR.          RSAR® 01/21
                                                                                          ROA 7/10


1 ADDITIONAL TERMS AND CONDITIONS
2 Buyer is purchasing this property as part of a 1031 Exchange, at no additional expense to Seller.
3 _____
4 _____
5 _____
6 _____
7 _____
8
9 **TAX DEFERRED EXCHANGE**    If BUYER or SELLER request to enter into a IRC tax deferred exchange for the
10 Property, each party agrees to cooperate with the other in connection with the exchange, including the execution of
11 documents deemed necessary to effectuate same. No party shall be obligated to delay the closing. All additional costs in
12 connection with the exchange shall be borne by the party requesting it. No party shall be obligated to execute any note,
13 contract, deed, or other document providing for any personal liability that would survive the exchange. The other party shall
14 be indemnified and held harmless against any liability arising or that has arisen on account of the acquisition of ownership of
15 the exchanged property.
16
17 **VERIFICATION OF INFORMATION**        Any information relating to square footage, land or its use, and/or
18 improvements of the land are approximate or estimates only, and neither SELLER nor Brokers make any representation or
19 guarantee regarding their accuracy. Any oral or written representations by SELLER or Brokers regarding the age of
20 improvements, size, or square footage of a parcel or building, or the location of property lines, may not be accurate.
21 Apparent boundary line indicators such as fences, hedges, walls, or other barriers may not represent the true boundary lines.
22 Brokers are not obligated to investigate the status of permits, zoning, or code compliance. BUYER to satisfy any concerns
23 with conditions that are an important or critical element of the purchase decision. BUYER agrees they have not received or
24 relied upon any representation by Brokers or SELLER with respect to the condition of the Property not contained in this
25 Agreement. The information contained in the Multiple Listing Service (MLS), computer, advertisements, and feature sheets
26 pertaining to the Property are not warranted or guaranteed by Brokers. Errors and/or omissions in inputting information,
27 while uncommon, are possible. BUYER shall be responsible for verifying the accuracy of such information. Deposit of all
28 funds necessary to close escrow shall be deemed final acceptance of the Property. SELLER agrees to hold Brokers harmless
29 and to defend and indemnify them from any claim, demand, action, or proceeding resulting from any omission or alleged
30 omission by SELLER.
31
32 **NEVADA LAW TO APPLY**    Nevada law shall apply to the interpretation and enforcement of this Agreement.
33
34 **MEDIATION**        If a dispute arises out of or relates to this Agreement or its breach, the parties are aware the local
35 Association of REALTORS® has a Dispute Resolution Service (DRS) available. A DRS brochure is available upon request.
36
37 **ATTORNEY FEES**    In the event either party is required to engage the services of an attorney to enforce this  Agreement,
38 the prevailing party in any proceeding shall be entitled to an award of reasonable attorney's fees, legal  expenses, and costs.
39
40 **CODE OF ETHICS**        Not all real estate licensees are REALTOR(S)®. A REALTOR® is a member of the National
41 Association of REALTORS® and therefore subscribes to a higher ethical standard, known as the REALTOR® Code of
42 Ethics. To receive a copy of the REALTOR® Code of Ethics, ask your real estate professional or the local Association of
43 REALTORS®.
44
45 **PROFESSIONAL CONSULTATION ADVISORY**    A real estate Broker is qualified to advise on real estate. The parties
46 are advised to consult with appropriate professionals including, but not limited to, engineers, surveyors, appraisers, lawyers,
47 CPAs, or other professionals on specific topics, including but not limited to, land use regulation, boundaries and setbacks,
48 square footage, physical condition, legal, tax, water rights, and other consequences of the transaction.

Address 5444 Spanish Moss Ct, Sparks, NV 89436

Buyer [ RWR ] [           ] [           ] and Seller [           ] [           ] [           ] have read this page.
ROA Page 8 of 10          This copyright protected form was created by members of RSAR and SNR.          RSAR® 01/21
                                                                                                          ROA 8/10

Authentisign ID: EC1FF595-FBF8-4E08-98EC-01579F05D811

1 **SELLER DEFAULT**   If SELLER defaults in the performance of this Agreement, BUYER shall have the right to recover
2 from SELLER all of BUYER's actual damages BUYER may suffer as a result of SELLER's default, and to pursue any and
3 all remedies available at law or in equity.
4
5 **BUYER DEFAULT**   BUYER must initial <u>only one</u> of the following.
6 If BUYER defaults in the performance of this Agreement, SELLER shall have the right to:
7   **A.** [RWR] [ ] [ ]   **(BUYER Initials)** Liquidated Damages: SELLER shall have the right to retain, as their sole
8   legal recourse, the EMD. BUYER and SELLER hereby acknowledge SELLER's actual damages would be difficult to
9   measure and that the EMD is a fair and reasonable estimate of such damages.
10 **OR**
11   **B.** [ ] [ ] [ ]   **(BUYER Initials)** Actual Damages: SELLER shall have the right to recover from BUYER all
12   of SELLER's actual damages that SELLER may suffer as a result of BUYER's default, and to pursue any and all reme-
13   dies available at law or in equity.
14
15 **THE FOLLOWING HAVE BEEN RECEIVED AND ACKNOWLEDGED BY BUYER:**
16 ☐ Consent to Act
17 ☑ Duties Owed by a Nevada Real Estate Licensee
18 ☑ Environmental Contact List
19 ☐ HUD Inspection For your Protection: Get a Home Inspection
20 ☐ Information Regarding Private Well and Septic System
21 ☑ Residential Disclosure Guide
22 ☑ Wire Fraud Advisory
23 ☐ Other _____
24 ☐ Other _____
25
26 **THE FOLLOWING ADDENDA AND EXHIBITS SHALL BE INCORPORATED**
27 ☑ Common Interest-Community Information Statement "Before You Purchase Property ..."
28 ☐ Lead-Based Paint Disclosure Statement (for properties built prior to 1978)
29 ☐ Open Range Land Disclosure
30 ☐ Residential/Lease Rental Agreement
31 ☐ Seller Financing Addendum (Residential)
32 ☐ Short Sale Addendum to the Offer and Acceptance Agreement
33 ☐ Short Term Agreement to Occupy After Close of Escrow
34 ☐ Used Manufactured/Mobile Home Disclosure
35 ☐ Other _____
36 ☐ Other _____
37
38 **ENTIRE AGREEMENT**   This Agreement and attachments contain the entire agreement of the parties and supersede all
39 prior agreements or representations with respect to the Property not expressly set forth in this Agreement. This Agreement
40 may only be modified in writing, signed and dated by the parties. BUYER acknowledges having read and approved all
41 provisions of this Agreement.
42
43 **ASSIGNMENT**   BUYER may not assign any of BUYER'S rights in this Agreement without prior written consent of
44 SELLER, which consent shall not be unreasonably withheld, conditioned, or delayed. Any purported assignment in violation
45 of this Section shall be null and void. No assignment shall relieve the assigning party of any of its obligations in this
46 Agreement.
47
48 **TIME IS OF THE ESSENCE**   Time is of the essence of this Agreement.
49
50 **SELLER** has agreed, by separate listing agreement, to pay real estate commissions for services rendered, at COE.
51 As published in the MLS, 2.5     % of the accepted price, or $ _____ , shall be paid to BUYER's real
52 estate brokerage, Coldwell Banker Select Real Estate _____ .

Address 5444 Spanish Moss Ct, Sparks, NV 89436

Buyer [ [RWR] ]/[ ]/[ ] and Seller [ ]/[ ]/[ ] have read this page.

ROA Page 9 of 10          This copyright protected form was created by members of RSAR and SNR.

RSAR© 01/21
ROA 9/10

1 **EXPIRATION OF OFFER**    Per NRS 645.254, all offers must be presented to SELLER. This Offer expires unless
2 accepted, including delivery to BUYER, or Eric Rosenberg _____
3 on/or before 5:00 _____ ☐A.M. ☑P.M. on 11/26/2021 _____.

| 4 | | | |
|---|---|---|---|
| 5 BUYER | *Richard W Ragon, MGR* | DATE 11/25/2021 | Time 5:47 PM |
| 6 | 11/26/2021 5:47:14 PM PST | | |
| 7 BUYER | | DATE | Time |
| 9 BUYER | | DATE | Time |
| 11 BUYER | | DATE | Time |

13 **BUYER's Representation:**
14 BUYER's Licensee Name  Eric Rosenberg _____    BUYER Broker Name Ron Hoy _____
15 BUYER's Licensee Nevada License # 43925 _____    BUYER's Broker Nevada License # 17991 _____
16 BUYER's Licensee Email rosenberg.eric2@gmail.com    Brokerage Name Coldwell Banker Select Real Estate
17 Phone 775-750-9833 _____ Fax 775-787-6935 ____    Office Address  1170 S. Rock Blvd, Ste. 2 _____
18                                                        City/State/Zip Reno, NV 89502 _____
19
20 BUYERS Licensee signature acknowledging receipt of EMD  [_____]
21

22                **SELLER'S ACCEPTANCE, COUNTER OFFER OR REJECTION OF AGREEMENT**
23 SELLER acknowledges having read and approved each provision of this Agreement. Authorization is given to Brokers to
24 deliver a signed copy to BUYER and disclose the terms of the sale to members of the MLS or Association of REALTORS®
25 at COE. SELLER has the authority to sell the Property on the terms and conditions stated in this Agreement.
26
27 **TAX WITHHOLDING (FIRPTA)**    Unless the Property is acquired for use as a primary residence and is sold for no
28 more than $300,000, SELLER agrees to provide BUYER with (a) Non-Foreign Seller Affidavit, or (b) Withholding
29 Certificate Form from the Internal Revenue Service stating that withholding is not required. In the event none of the
30 foregoing is applicable, BUYER requires a percentage of SELLER's proceeds to be escrowed to comply with the FOREIGN
31 INVESTMENT AND REAL PROPERTY TAX ACT (IRC 1445).
32
33 [_____|_____|____|____] SELLER ☑ is not a foreign person  OR  ☐ is a foreign person and may be sub-
34 ject to FIRPTA withholding.
35
36 **SELLER** shall check one of the following options, and date, time, and sign this Agreement.
37 ☒ **Acceptance of Offer**    SELLER accepts this Offer.
38 ☐ **Counter Offer #1**    SELLER signs this Offer subject to a Counter Offer #1 dated _____.
39 ☐ **Rejection**    SELLER rejects the foregoing Offer.

| 40 | | | |
|---|---|---|---|
| 41 SELLER | | DATE 11/26/2021 | Time 12'03 |
| 43 SELLER | | DATE | Time |
| 45 SELLER | | DATE | Time |
| 47 SELLER | | DATE | Time |

49 **SELLER's Representation:**
50 SELLER's Licensee Name Jim Tench _____    SELLER's Broker Name _____
51 SELLER's Licensee Nevada License # _____    SELLER's Brokers Nevada License # _____
52 Phone _____ Fax _____    Brokerage Name Ferrari-Lund Real Estate Reno
53 SELLER's Licensee Email wintench@gmail.com    Office Address _____
54                                                 City/State/Zip _____

Address 5444 Spanish Moss Ct, Sparks, NV 89436 _____

ROA Page 10 of 10       This copyright protected form was created by members of RSAR and SNR.       RSAR® 01/21
                                                                                                    ROA 10/10

# EXHIBIT 3

# OWNER'S AFFIDAVIT (NEVADA)

TO:    TICOR TITLE OF NEVADA, INC.

RE:    Preliminary Report No. **02107928**-AJF
       Dated:  November 7, 2021
       Seller/Owner:   Donald Clark

REAL PROPERTY DESCRIPTION:  SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF (THE "PROPERTY").

The undersigned affiant(s), after being duly sworn hereby state(s) under oath that the following information is true and correct:

1.  <u>Purpose of Affidavit:</u>  This affidavit is made to Ticor Title of Nevada, Inc., A Nevada Corporation (hereinafter "the Company") as an inducement to them to complete a transaction in connection with the above-described property.  The undersigned acknowledges that the Company and other persons are relying upon the representations in this affidavit as being true and correct and that the transaction would not be consummated without this affidavit being executed.  The undersigned represents that he or she is the person whose signature is affixed below and, if applicable, that he or she is duly authorized and qualified to execute this affidavit.

2.  <u>Debts or Liens:</u>  Except as indicated below, there are no:  (a) loans; (b) actions or proceedings relating to the above described real property in any State or Federal Court in the United States; (c) State or Federal Judgments or any Federal Liens of any kind or nature whatever which now constitutes a lien or charge upon the subject real property; (d) unrecorded liens, mortgages, tax liens; or (e) other estate liens on the above described property:  (if none, handwrite None)

*None*

3.  <u>Improvement Debts or Liens:</u>  Except as indicated below, there are no financing statements, chattel mortgages, conditional bills of sale or retention of title agreements affecting any fixtures located on the above property, unpaid debts including, but not limited to, on any of the following items which may be remaining on the property:  plumbing fixtures, water heaters, floor furnaces, air conditioners, radio or television antennae, carpeting and/or rugs, lawn sprinkling systems, venetian blinds, window shades, draperies, electric appliances, fences, street paving or any personal property or fixtures that are attached to or part of the subject property described above, and there are no security interest on such property secured by financing statements, security agreements or otherwise, nor any bills or contracts outstanding for materials furnished and labor performed in connection with any construction or improvements on the above property with the exception of the following:  (if none, handwrite None)

*None*

4.  Homeowner Association ("HOA") and <u>Special Improvement Liens:</u>  Affiant has received no notice of either delinquent HOA assessments or Special Improvement Liens outstanding against the property <u>other than those assessed under</u> _____, and

knows of no petitions for the paving, widening or other improvements to streets, alleys or sidewalks adjoining this property.

5.  Bankruptcy:  There are no proceedings in bankruptcy or receivership that have been instituted by or against the owner of the subject property (and if a partnership, against the general partner(s) thereof), no assignment for the benefit of creditors has been made by the undersigned owner.  The undersigned acknowledges that bankruptcy of the undersigned will not discharge any liabilities to the Company which arise out of false or fraudulent representation in this affidavit.

6.  Off-Record Matters:  The undersigned knows of no unrecorded easements or claims of easements, no disputes, discrepancies or encroachments affecting a setback or boundary line, and no contracts, options or rights to purchase other than in the transaction for which this Affidavit is given.  There are no unrecorded judgments, liens, mortgages or other claims against the above property.

7.  Civil Liability:  The undersigned is liable to the Company for (1) Payment of unpaid debts or liens on the property not disclosed above, and (2) attorneys fees and expenses incurred in enforcing such liability.

8.  Criminal Liability:  The undersigned has been notified that a false or fraudulent representation knowingly made by the undersigned in this affidavit constitutes a felony.

9.  Parties in Possession:  The undersigned knows of no parties in possession that have the right to be in possession of said Premises or any interest therein, including oil, gas or other minerals, other than (i) tenants shown as having such an interest by the Prelim No.**02107928** issued by Ticor Title of Nevada, Inc. or (ii) tenants identified on the annexed Rent Roll, all having rights as tenants only, none of which have an option to purchase or right of first refusal affecting the Premises and all of which tenants have leases containing automatic subordination to landlord's deeds of trust.

10.  Covenants & Restrictions:  To the knowledge of the undersigned, (a) the undersigned has received no notice of past or present violations of any effective covenants, conditions or restrictions set forth in the Preliminary Title Report (the CC&R's) and (b) any charge or assessment provided for in any of the CC&R's has been duly paid.

11.  Compliance with Notice Requirements of NRS 107.080 et. seq. as amended by AB 140 and AB 149; That insofar as known to the affiant, no claims have been made by the former owner of said land, or anyone claiming under him or acting on his behalf, or other persons having interests in or liens of any irregularity or invalidity of any of the non-judicial foreclosure proceedings pursuant to NRS 107.080 et. seq., as amended by AB 140 and AB 149 and leading up to and including the issuance of the above mentioned deed or of any interest adverse to the title of this affiant, nor does affiant have actual knowledge of any such irregularities except:  (if none, handwrite None)

*None*

12.  Indemnity:  The undersigned acknowledge that they have read the foregoing and fully understand the legal aspects of any misrepresentations and/or untrue statements made herein and indemnify and hold harmless Ticor Title of Nevada, Inc. against liability occasioned by reason of reliance upon the statements made herein.

Signature page to be affixed to Owner's Affidavit

AFFIANT:

_____
Donald Clark

**EXHIBIT A**
**LEGAL DESCRIPTION**

All that certain real property situate in the County of Washoe, State of Nevada, described as follows:

Lot 84 of VISTA RIDGE UNIT 2C, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 3, 1999, as File No. 2347211, of Official Records and as Tract Map No. 3700.

EXCEPTING THEREFROM all minerals, oil, gas, petroleum, other hydrocarbon substances and all geothermal energy sources in or under or which may be produced from the within-described land, which lie below plane parallel to and one hundred (100) feet from the surface of the within-described land, for the purpose of prospecting, exploration, development, production, or extraction of said substances shall have no right to enter the surface of the within-described land nor to use said land above said plane parallel to and one hundred (100) feet below the surface of such land, as reserved in a Deed recorded December 31, 2002, Document No. 2784118, Official Records, Washoe County.

APN: 518-643-13

# EXHIBIT 4

**WHEN RECORDED MAIL TO:**
Sphere, LLC
2 Victoria Road
Burlingame, CA 94010

**MAIL TAX STATEMENTS TO:**
Same as above

Escrow No.  2107928-AJF

The undersigned hereby affirms that this document
submitted for recording does not contain the social
security number of any person or persons.
(Pursuant to NRS 239b.030)

**DOC #5259773**
12/17/2021 11:09:55 AM
Electronic Recording Requested By
TICOR TITLE - RENO 500 W PLUMB L
Washoe County Recorder
Kalie M. Work
Fee: $43.00  RPTT: $2296.00
Page 1 of 3

APN No.:  518-643-13
R.P.T.T.  $2,296.00

SPACE ABOVE FOR RECORDER`S USE ONLY

## GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESSETH:  That**

**Donald Clark, an unmarried man**

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, do/does hereby
Grant, Bargain, Sell and Convey to**

**Sphere, LLC, a California limited liability company**

all that real property situated in the County of Washoe, State of Nevada, described as follows:
   SEE EXHIBIT "A" ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging
or in anywise appertaining.

Signature and notary acknowledgement on page two.

Donald Clark

STATE OF NEVADA
COUNTY OF WASHOE                                    } ss:

This instrument was acknowledged before me on , ___December 14, 2021___
by  Donald Clark



NOTARY PUBLIC

This Notary Acknowledgement is attached to that certain Grant, Bargain, Sale Deed under escrow No.
02107928.

ASHLEY FARRINGTON
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 15-2428-2 - Expires July 13, 2023

Escrow No. 2107928-AJF

### EXHIBIT A
### LEGAL DESCRIPTION


All that certain real property situate in the County of Washoe, State of Nevada, described as follows:

**Lot 84 of VISTA RIDGE UNIT 2C, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 3, 1999, as File No. 2347211, of Official Records and as Tract Map No. 3700.**

**EXCEPTING THEREFROM all minerals, oil, gas, petroleum, other hydrocarbon substances and all geothermal energy sources in or under or which may be produced from the within-described land, which lie below plane parallel to and one hundred (100) feet from the surface of the within-described land, for the purpose of prospecting, exploration, development, production, or extraction of said substances shall have no right to enter the surface of the within-described land nor to use said land above said plane parallel to and one hundred (100) feet below the surface of such land, as reserved in a Deed recorded December 31, 2002, Document No. 2784118, Official Records, Washoe County.**

**APN: 518-643-13**

# EXHIBIT 5

DOC #5164473
04/09/2021 02:35:47 PM
Electronic Recording Requested By
DUBOWSKY LAW OFFICE CHTD
Washoe County Recorder
Kalie M. Work
Fee: $43.00  RPTT: $
Page 1 of 4

**RECORDING COVER PAGE**

**TITLE OF DOCUMENT**   (DO NOT Abbreviate)

Default Judgment
_____

_____

_____

**Title of the Document on cover page must be EXACTLY as it appears on the first page of the document to be recorded.**

**Recording requested by:**

Peter Dubowsky, Esq.
_____

**Return to:**

**Name** Dubowsky Law Office, Chtd.
_____

**Address** 300 South Fourth Street, Suite 1020
_____

**City/State/Zip** Las Vegas, NV 89101
_____

This page provides additional information required by NRS 111.312 Sections 1-2.

An additional recording fee of $1.00 will apply.

To print this document properly—do not use page scaling.

P:\Recorder\Forms 12_2010

5164473  Page 2 of 4 - 04/09/2021 02:35:47 PM

F I L E D
Electronically
CV20-00829
2021-03-24 12:18:42 PM
Jacqueline Bryant
Clerk of the Court
Transaction # 8358660

1880
Peter Dubowsky, Esq.
Nevada Bar No. 4972
DUBOWSKY LAW OFFICE
300 South Fourth Street, Suite 1020
Las Vegas, Nevada 89101
(702) 360-3500
Fax (702) 360-3515
Attorney for Plaintiff

## IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

## IN AND FOR THE COUNTY OF WASHOE

| | |
|---|---|
| PAWNEE LEASING CORPORATION | ) Case No.: CV20-00829 |
| | ) |
| Plaintiff, | ) Dept No.: 6 |
| | ) |
| vs. | ) |
| | ) |
| DONALD   CLARK,   JR.   individually   as | ) |
| personal guarantor; and DOES I-X and ROE | ) |
| CORPORATIONS I-X, inclusive | ) |
| | ) |
| Defendants | ) |

## DEFAULT JUDGMENT

Defendant, DONALD CLARK, JR., having been served with the Summons by Publication and having failed to appear, plead or otherwise answer and the legal time therefore having expired, and the Default of said Defendant having been duly entered according to law on the 23rd day of February 2021, and in accordance with the prayer of the Complaint and Affidavit in Support of Judgment, and good cause appearing, Plaintiff shall be awarded judgment against Defendant in the amount of $59,639.91 plus 18% contractual interest of $13,852.11 (at a rate of $29.41 per day for 471 days from the default date of December 1, 2019 through March 16, 2021) plus court costs of $449.00 plus attorney's fees

- 1

DUBOWSKY LAW OFFICE, CHTD.

1    of $15,000.00 for a judgment total of $88,941.02 with 18% contractual interest accruing on

2    the total foregoing until the judgment is satisfied.

3

4    Dated: March 23, 2021

5

6

7

8                       DISTRICT COURT JUDGE

9    Submitted by:

10   DUBOWSKY LAW OFFICE, CHTD.

11

12

13   By: /s/Peter Dubowsky
          Peter Dubowsky, Esq.

14         Nevada Bar No. 4972
        300 South Fourth Street, Suite 1020

15       Las Vegas, Nevada 89101
        (702) 360-3500

16       Fax (702) 360-3515
        Attorney for Plaintiff

17

18

19

20

21

22

23

24

25

DUBOWSKY LAW OFFICE, CHTD.

- 2

CERTIFIED COPY

The document to which this certificate is attached is a full, true and correct copy of the original on file and of record in my office.

DATE: _____APR 0 5 2021_____

JACQUELINE BRYANT, Clerk of the Second Judicial District, Court, in and for the County of Washoe, State of Nevada.

By _____ Deputy

_____ Pages

# EXHIBIT 6

**RECORDING COVER PAGE**

DOC #5340478
10/20/2022 02:07:24 PM
Electronic Recording Requested By
DUBOWSKY LAW OFFICE CHTD
Washoe County Recorder
Kalie M. Work
Fee: $43.00  RPTT: $0
Page 1 of 6

**TITLE OF DOCUMENT**   **(DO NOT Abbreviate)**

Default Judgment

_____

_____

_____

**Title of the Document on cover page must be EXACTLY as it appears on the first page of the document to be recorded.**

**Recording requested by:**

Peter Dubowsky, Esq.
_____

**Return to:**

**Name** ___Dubowsky Law Office, Chtd._____

**Address** ___300 South Fourth Street, Suite 1020_____

**City/State/Zip** ___Las Vegas, NV 89101_____

This page provides additional information required by NRS 111.312 Sections 1-2.

An additional recording fee of $1.00 will apply.

To print this document properly—do not use page scaling.

P:\Recorder\Forms 12_2010

F I L E D
Electronically
CV20-00829
2021-03-24 12:18:42 PM
Jacqueline Bryant
Clerk of the Court
Transaction # 8358660

1  1880
   Peter Dubowsky, Esq.
2  Nevada Bar No. 4972
   DUBOWSKY LAW OFFICE
3  300 South Fourth Street, Suite 1020
   Las Vegas, Nevada 89101
4  (702) 360-3500
   Fax (702) 360-3515
5  Attorney for Plaintiff

6

   **IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA**
7
   **IN AND FOR THE COUNTY OF WASHOE**
8

9

10 PAWNEE LEASING CORPORATION      )   Case No.: CV20-00829
                                   )
11        Plaintiff,               )   Dept No.: 6
                                   )
12     vs.                         )
                                   )
13 DONALD   CLARK,   JR.   individually   as )
   personal guarantor; and DOES I-X and ROE )
14 CORPORATIONS I-X, inclusive     )
                                   )
15        Defendants               )

16                        **DEFAULT JUDGMENT**

17

18        Defendant, DONALD CLARK, JR., having been served with the Summons by

19 Publication and having failed to appear, plead or otherwise answer and the legal time

20 therefore having expired, and the Default of said Defendant having been duly entered

21 according to law on the 23rd day of February 2021, and in accordance with the prayer of the

22 Complaint and Affidavit in Support of Judgment, and good cause appearing, Plaintiff shall

23 be awarded judgment against Defendant in the amount of $59,639.91 plus 18% contractual

24 interest of $13,852.11 (at a rate of $29.41 per day for 471 days from the default date of

25 December 1, 2019 through March 16, 2021) plus court costs of $449.00 plus attorney's fees

- 1

1   of $15,000.00 for a judgment total of $88,941.02 with 18% contractual interest accruing on

2   the total foregoing until the judgment is satisfied.

3

4   Dated: March 23, 2021

5

6

7

8                                                              _____
                                                               DISTRICT COURT JUDGE

9   Submitted by:

10  DUBOWSKY LAW OFFICE, CHTD.

11

12

13  By: /s/Peter Dubowsky
        Peter Dubowsky, Esq.

14      Nevada Bar No. 4972
        300 South Fourth Street, Suite 1020

15      Las Vegas, Nevada 89101
        (702) 360-3500

16      Fax (702) 360-3515
        Attorney for Plaintiff

17

18

19

20

21

22

23

24

25

- 2



CERTIFIED COPY
The document to which this certificate is attached is a full, true and correct copy of the original on file and of record in my office.

DATE: APR 0 5 2021
JACQUELINE BRYANT, Clerk of the Second Judicial District Court, in and for the County of Washoe, State of Nevada.

By _____ Deputy
_____ Pages



**DUBOWSKY LAW OFFICE, CHTD.**

## **DECLARATION OF JUDGMENT**

COUNTY OF CLARK)

STATE OF NEVADA)

     I am the attorney for the Judgment Creditor, and I have personal knowledge of the following, and I am competent to testify to the same.

1. The name and address of the judgment debtor who is a natural person is:

    Donald Clark, 5444 Spanish Moss Ct., Sparks, NV 89436

2. The judgment debtor's last four digits of the judgment debtor's driver's license number or identification card number and the state of issuance is:

    7096 Nevada

3. The last four digits of the judgment debtor's social security number are:

    7340

4. I declare under penalty of perjury that the foregoing is true and correct.

    Dated:  10/20/22

                                  /s/Peter Dubowsky

                                _____

# WASHOE COUNTY
# RECORDER

**OFFICE OF THE RECORDER**
**KALIE M. WORK, RECORDER**

**1001 E. NINTH STREET**
**RENO, NV 89512**
PHONE (775) 328-3661
FAX (775) 325-8010

## <u>LEGIBILITY NOTICE</u>

The Washoe County Recorder's Office has determined that the attached document may not be suitable for recording by the method used by the Recorder to preserve the Recorder's records. The customer was advised that copies reproduced from the recorded document would not be legible. However, the customer demanded that the document be recorded without delay as the parties rights may be adversely affected because of a delay in recording. Therefore, pursuant to NRS 247.120 (3), the County Recorder accepted the document conditionally, based on the undersigned's representation (1) that a suitable copy will be submitted at a later date (2) it is impossible or impracticable to submit a more suitable copy.

By my signing below, I acknowledge that I have been advised that once the document has been microfilmed it may not reproduce a legible copy.

_____
Signature

_____
10/20/22
Date

William Thompson
_____
Printed Name