UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SPHERE, LLC, | Case No. 3:23-cv-00176-MMD-CBL |
| Plaintiff, | ORDER |
| v. | |
| PAWNEE LEASING CORPORATION, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

Plaintiff Sphere, LLC ("Sphere") holds title to real property located at 5444 Spanish Moss Court in Sparks, Nevada ("Property") and brings this action against Defendants Donald Clark[1], from whom Sphere acquired title, and Pawnee Leasing Corporation ("Pawnee"), which asserts that it holds a valid judgment lien attached to the Property. (ECF No. 1 ("Complaint").) Before the Court is Defendant Pawnee's motion to dismiss Plaintiff's claim for quiet title and declaratory relief. (ECF No. 12 ("Motion").)[2] As further explained below, the Court will deny the Motion.

**II.   BACKGROUND**[3]

On November 25, 2021, Plaintiff Sphere entered into an agreement with Donald Clark to purchase real property in the Vista Ridge neighborhood of Sparks, Nevada. (ECF No. 1 at 3.) During an escrow period, Clark completed an owner's affidavit disclaiming any debts, liens, or other off-record claims against the Property. (*Id.*) The sale closed on December 17, 2021, at which time Sphere paid Clark the purchase price

---

[1]Defendant Clark filed a notice of bankruptcy (ECF No. 28) and this action is stayed with respect to the claims against him.

[2]Plaintiff filed a response (ECF No. 16) and Defendant filed a reply (ECF No. 23).

[3]The following facts are adapted from the Complaint.

of $560,000 and Clark conveyed title to the Property to Sphere through a grant, bargain, and sale deed. (*Id.*) The deed was recorded in the Official Records of Washoe County. (*Id.*)

After this conveyance and recording, Sphere received notice from Defendant Pawnee that Pawnee holds a default judgment against Clark, which it recorded in the Official Records of Washoe County on April 9, 2021—eight months before the sale of the Property to Sphere. (*Id.* at 4.) It is undisputed that at the time Pawnee recorded the judgment in April, it did not record an additional "affidavit of judgment" as described in NRS § 17.150(4). (*Id.* at 4-5.) The recorded judgment itself did not identify property information, such as parcel number or address. (*Id.*) It identified the judgment debtor as "Donald Clark, Jr.," rather than as "Donald Clark," as he was known at the sale of the Property. (*Id.* at 5, 6-7.) It did not include other debtor information, such as the last four digits of Clark's driver's license or social security number. (*Id.* at 5.) Finally, the judgment did not include a statement that the judgment creditor had confirmed Clark was the legal owner of the Property. (ECF Nos. 1 at 5, 16 at 11.)

Sphere alleges that on October 20, 2022 Pawnee attempted to fix its mistake in failing to record an affidavit along with the judgment in April 2021. (ECF No. 1 at 6.) It again recorded the same default judgment in the Washoe County Records. (*Id.*) This time, however, Pawnee also recorded an attorney declaration of judgment. (*Id.*) Sphere alleges that Pawnee has since threatened to commence foreclosure of the Property, maintaining that its lien is valid against Sphere. (*Id.*)

Pawnee now moves to dismiss the single claim[4] for quiet title and declaratory relief brought against it in the Complaint for insufficient pleading under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12.) Plaintiff seeks relief under the Nevada Uniform Declaratory Judgment Act, NRS § 30.010 *et seq.,* and NRS § 40.010, and asks the

---

[4]Sphere alleges seven causes of action. Six of those claims are solely against Defendant Clark. (ECF No. 1.)

Court to issue a judgment declaring: (1) the April 2021 recording did not create a lien on the Property because Pawnee failed to record the affidavit of judgment mandated by NRS § 17.150(4); (2) the October 2022 recording did not create a lien on the Property because Clark did not own the Property at the time of the recording; and (3) Pawnee has no interest in the Property whatsoever by virtue of the default judgment. (ECF No. 1 at 7.) Alternatively, Plaintiff seeks judgment declaring that it is a bona fide purchaser who took title to the Property free and clear of Pawnee's claimed interest. (*Id.*)

## III.  DISCUSSION

Pawnee moves to dismiss Sphere's claim for declaratory relief and/or quiet title for failure to state a claim under Rule 12(b)(6), arguing that as a matter of Nevada law, Pawnee maintains a valid judgment lien and thus there are no facts under which Sphere is entitled to relief denying Pawnee's rights with respect to the Property. (*Id.*) *See* NRS § 30.010; NRS § 40.010 ("An action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim.").[5] Sphere argues that it is entitled to relief on two separate but connected grounds. First, Sphere maintains that Pawnee did not create a valid judgment lien on the property in April 2021 because, although Pawnee recorded the judgment as required by section 17.150(2), it failed to record an

---

[5]Pawnee argues in its reply brief that Sphere's citation to the Nevada Uniform Declaratory Judgment Act is misplaced, and that this Court should instead apply the Federal Declaratory Judgments Act, because "[a] request for a declaratory judgment is a remedy, not a [substantive] cause of action" and Sphere "has not stated a claim for 'Quiet Title.'" (ECF No. 23 at 5.) However, Sphere does not present a standalone declaratory judgment claim—its request is tied to Nevada's quiet title statute. Actions to "resolve competing claims to title and clouds on title are quiet title actions brought under NRS 40.010." *U.S. Bank, N.A. as Tr. for Specialty Underwriting & Residential Fin. Tr. Mortg. Loan Asset-Backed Certificates Series 2006-BC4 v. Thunder Properties, Inc.*, 503 P.3d 299, 304 (Nev. 2022). *See also Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (*citing Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013)). "A plea to quiet title does not require any particular elements, but 'each party must plead and prove his or her own claim to the property in question' and a 'plaintiff's right to relief therefore depends on superiority of title.'" *Chapman*, 302 P.3d at 1106 (*quoting Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir.1992)). Because Pawnee argues that declaratory relief is inappropriate only on the basis that Sphere has not stated a quiet title claim, in resolving this Motion the Court will consider the substantive validity of the quiet title claim under NRS § 40.010.

additional affidavit of judgment under section 17.150(4). (ECF No. 1 at 6-7.) Second, Sphere argues that it is a bona fide purchaser because Pawnee failed to impart requisite notice to third-party buyers. (*Id.* at 7.) Here, Sphere may be entitled to relief even if Pawnee created a valid lien in April 2021. The Court addresses Pawnee's Motion as to each argument.

### A.     Attachment of Pawnee's Judgment Lien Under NRS § 17.150

The Court first considers whether Pawnee created a valid lien in April 2021 as a matter of Nevada law under NRS § 17.150, the statute governing judgment liens on real property. Pawnee argues that Sphere fails to state a claim to remove the cloud on its title because under section 17.150(2), Pawnee unequivocally established a valid lien on the Property when it recorded its judgment in Washoe County in 2021. (ECF Nos. 1 at 6-7, 12 at 3.) Sphere responds that Pawnee did not establish a valid lien at that time, because it failed to record an additional affidavit of judgment mandated under section 17.150(4) with information required to "put[] the world on notice of the identity of the judgment debtor and the property that is the subject of the lien." (ECF No. 16 at 3.) The Court agrees with Pawnee.

Pawnee's Motion rests primarily on a question of Nevada law—how and when a judgment lien attaches under NRS § 17.150. Dismissal is proper under Rule 12(b)(6) when a complaint exhibits the "lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). While a district court must accept as true all well-pled factual allegations in a complaint, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Nevada Supreme Court has not directly addressed the instant question. "Where the state's highest court has not decided the issue, a federal court must predict how that court would decide." *Sears v. Russell Rd. Food & Beverage, LLC*, 460 F. Supp. 3d 1065, 1071 (D. Nev. 2020) (citing *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007)). *See also Goudge v. State*, 287 P.3d 301, 303 (Nev. 2012). When considering a statute, the Nevada Supreme Court "ascribe[s] plain meaning to its words, unless the plain meaning

was clearly not intended." *In re Contrevo*, 153 P.3d 652, 653-54 (Nev. 2007). If a statute is subject to more than one reasonable interpretation, the Court looks to legislative intent to resolve ambiguity. *See Id.* "[R]eason and public policy may be considered in determining what the legislature intended." *Id.* In addition, the high court considers "the statute's multiple legislative provisions as a whole" because "statutory interpretation should not render any part of a statute meaningless" or "produce absurd or unreasonable results." *Leven v. Frey*, 168 P.3d 712, 716 (Nev. 2007) (quoting *Harris Assocs.*, 81 P.3d 532, 534 (Nev. 2003)).

NRS § 17.150 is ambiguous to the extent the subsection (2) appears on its face to indicate that judgment lien on a debtor's current and future real property is created when a transcript of the original docket or an abstract or copy of any judgment is recorded, but subsection (4) imposes an additional requirement that a creditor creating a lien on real property "shall record at [the time of the recording of a judgment] an affidavit" with more information about the debtor and property.[6] *See id*. The statute could be read either to indicate that a lien is perfected according to subsection (2), or that a lien does not attach unless or until an affidavit of judgment is filed under subsection (4). The Court thus must apply statutory construction principles to interpret NRS § 17.150, beginning with the statute's plain meaning and considering legislative intent to predict how the Nevada Supreme Court would decide the issue. *See In re Contrevo*, 153 P.3d at 653-54.

First, taken as a whole, the plain meaning of the text of NRS § 17.150 supports Pawnee's position. Subsection (2) states that "[a] transcript of the original docket or an

---

[6]Subsection (4) states that "[i]n addition to recording the information described in subsection 2, a judgment creditor who records a judgment or decree for the purpose of creating a lien upon the real property of the judgment debtor pursuant to subsection 2 shall record at that time an affidavit on judgment stating" information including the name and address of the judgment debtor; the last four digits of the debtor's driver's license, identification card, or social security number; and the parcel number and address of currently-owned real property. NRS § 17.150(4). In addition, "[a]ll information included in an affidavit of judgment recorded pursuant to this subsection must be based on the personal knowledge of the affiant." *Id.*

5

abstract of any judgment or decree . . . may be recorded in the office of the county recorder in any county, and *when so recorded it becomes a lien upon all the real property of the judgment debtor* not exempt from execution in that county, owned by the judgment debtor at the time, or which the judgment debtor may afterward acquire, until the lien expires." NRS § 17.150(2) (emphasis added). Subsection (2) also provides that a "lien continues for 6 years after the date the judgment or decree was docketed, and is continued each time the judgment or decree is renewed," unless one of several enumerated exceptions applies. *Id.* On its face, this suggests that a judgment creates a lien at the moment it is recorded. This plain reading is supported by the fact that recording under subsection (2) sets a six-year timeframe during which a lien is valid, subject to few exceptions, and this clock is not impacted by the filing of an affidavit under subsection (4). *See Evans v. Samuels,* 75 P.3d 361, 363 (Nev. 2003) (emphasizing that NRS § 17.150(2) provides a lien will last for six years from the date the judgment was docketed); *Leven*, 168 P.3d at 713.

Moreover, by the statute's plain language, a lien created under subsection (2) applies not just to a debtor's presently-owned real property but to property "afterward acquire[d]" by the debtor. NRS § 17.150(2). Because real property acquired in the future by definition is not yet identifiable by parcel number and address, it is not clear why any lien's initial *validity* must depend upon the recording of this information under subsection (4)(c) for the purpose of *notice*, as Sphere argues. (ECF No. 16 at 3.) Rather, because subsection (2) plainly indicates that a judgment lien attaches to not-yet-acquired future property at the moment of recording, the statute most logically suggests that all liens are perfected at the time a judgment is recorded as to debtors—who also independently receive notice of judgments under Chapter 21 of the Nevada Revised Statutes.[7] *See,*

---

[7]The Nevada legislature amended NRS § 17.150 in 2011 to include additional requirements for the affidavit filed under subsection (4), including requiring parcel number and address of currently-owned real property, as well as indicating that information in the affidavit must be based on personal knowledge. *See* 2011 Nev. Laws

*e.g.*, NRS § 21.075. This reading is consistent with other provisions of the Nevada Revised Statutes. *See, e.g.*, NRS § 21.020 (governing issuance of writs of execution "out of the real property belonging to the debtor on the day when the abstract or certified copy of the judgment or decree was recorded"); NRS § 68.040 (governing liens created by judgments rendered in Nevada justice court and stating that when an abstract is recorded the judgment "becomes a lien upon all the real property of the judgment debtor" without requiring an additional affidavit).

This reading of the statute is also consistent with Nevada courts' approaches. While the Nevada Supreme Court has never directly addressed this issue, it has regularly assumed that recording a judgment under subsection (2) itself creates a valid lien. *See, e.g., Leventhal v. Black*, 305 P.3d 907, 909 (Nev. 2013) ("[A] law firm can sue its client and obtain a money judgment for fees due, thereby acquiring, if recorded [under NRS § 17.150(2)], a judgment lien against the client's property"); *In re Contrevo*, 153 P.3d at 653-54 (citing to § 17.150(2) as guidance for when a judgment becomes a lien on real property). Pawnee cites to the single unpublished disposition in which the court of appeals has considered this question directly, *Secured Holdings, Inc. v. Eighth Jud. Dist. Ct. In & For Cnty. of Clark*, 133 Nev. 1072, (Nev. App. 2017). (ECF No. 12 at 2-3.)[8] There, the court of appeals similarly determined that filing an affidavit under section 17.150(4) is not a condition precedent to the creation of a valid judgment lien on real property. (*Id.*) While the affidavit is required, the statute "does not provide that the lien is invalid if the affidavit is not filed" and does not provide any consequence if an affidavit of judgment is not recorded. (*Id.*) The state supreme court would likely agree

---

Ch. 388 (S.B. 186). The amendment, however, did not clarify or change the requirements or timing for attachment of a lien. *Id.*

[8]Sphere notes that the decision is not binding on this Court and may not be cited for precedential value according to Nevada Rule of Appellate Procedure 36(c). (ECF No. 16 at 11.) That rule does not apply to this Court. The Court considers the disposition only as to its persuasive value in interpreting how the state high court would rule on the issue.

that the statute "does not clearly mandate dismissal based on the failure to comply with NRS 17.150[(4)]." (*Id.*)

Sphere argues that the Nevada Supreme Court's decision in *Leven v. Frey*, 168 P.3d 712, which applies statutory construction principles to a related statute governing judgment renewals, supports its position that a lien attaches to real property only when an affidavit is filed in accordance with NRS § 17.150(4). (ECF No. 16 at 13-14.) But Plaintiff misinterprets the nature of the strict compliance and recording requirements at issue in *Leven* as they relate to the requirements of NRS § 17.150 because the "affidavits" at issue under the two statutes are not analogous. In *Leven*, a judgment creditor timely filed an affidavit of judgment renewal but failed to serve or record the affidavit according to the timeline set by the renewal statute, NRS § 17.214. *See* 168 P.3d at 714. The debtor moved to declare void the expired judgment. *See id.* The Nevada Supreme Court ruled in favor of the debtor, finding that NRS § 17.214 requires strict compliance with all the renewal statute's requirements, including timely recording and service of the renewal affidavit. *See id.* at 720.

The Nevada Supreme Court's decision in *Leven* is consistent with Defendant's interpretation that a lien is perfected once the requirements of NRS § 17.150(2) are met for several reasons. First, the *Leven* Court explicitly reads the renewal statute in conjunction with NRS § 17.150, and in doing so assumes that a lien on real property becomes effective according to the requirements of section 17.150(2), without reference to section 17.150(4). *See id.* at 715 (quoting *Evans v. Samuels*, 75 P.3d at 363) ("NRS 17.150(2) creates a lien on a debtor's real property in a particular county when a judgment is recorded in that county . . . .") Second, and more structurally, the *Leven* Court interprets section 17.214(2) to require recording a judgment renewal affidavit in order to perfect the renewal—in addition to merely *filing* that document—because renewal without recordation would result in liens "automatically continuing under NRS 17.150(2) without any recorded notice." *Id.* at 717. However, importantly, the affidavit required to renew a judgment under section 17.214 requires no information beyond that

required by section 17.150(2). *See* NRS § 17.214(1)(a) (requiring, *inter alia*, the names of the parties; if the judgment is recorded, the name of the county and the document number; the date and the amount of any payment on a judgment; the exact amount due on the judgment). The recorded affidavit which perfects renewal of a judgment does *not* require additional information about debtors or real property analogous to the affidavit in section 17.150(4), such as the debtor's social security number, driver's license number, or parcel number. *See id.* This implies that renewal of a lien is not conditioned on such information.[9] Put another way, it would produce an inconsistent result for a lien on real property to attach only if an affidavit with complete real property information is filed under section 17.150(4), while a judgment may be renewed without a requirement to record or update similarly detailed information to renew the lien associated with the judgment.

The Court thus concludes that the state high court would interpret NRS § 17.150 to indicate that a judgment becomes a valid lien when it is recorded under subsection (2), and that recording an affidavit of judgment under subsection (4), while mandatory, is not a condition precedent to the creation of a valid lien. Accordingly, the Court finds that Sphere cannot as a matter of law state a claim for declaratory relief or quiet title purely

---

[9]As the *Leven* Court notes, when the Nevada legislature amended the renewal statute in 1995 it "focused on requiring that affidavits be recorded to ensure that real property liens are apparent in title searches." *Id.* at 716 (citing Hearing on S.B. 455 Before the Senate Judiciary Comm., 68th Leg., at 11 (Nev., May 23, 1995)). It failed to amend the statute to require additional information in the affidavit beyond that required to establish a lien under 17.150(2). *See id.* Moreover, when the legislature amended NRS § 17.150 in 2011 to require additional information in subsection (4) affidavits, it simultaneously amended NRS § 17.214, but added only that the *document* number of a recorded judgment must be included in the renewal affidavit. *See* 2011 Nev. Laws Ch. 388 (S.B. 186).

on the basis that Pawnee's April 2021 recording did not create a valid lien on Clark's Property.[10]

### B. Validity of Judgment Lien as to Sphere

The Court next considers Sphere's alternative claim that it is entitled to declaratory relief because it is a bona fide purchaser that took title to the Property free and clear of Pawnee's claimed interest. (ECF No. 1 at 5, 7; ECF No. 16 at 10-11.) In particular, the Court considers whether Sphere can claim bona fide purchaser status even if a valid lien attached in April 2021. Again, Sphere argues that "[w]ithout the recording of an affidavit of judgment [under NRS § 17.150(4)] . . . the world is not on proper notice of the identity of the judgment debtor and the property to which the lien pertains." (ECF No. 16 at 14-15.) Pawnee argues that the default judgment recorded in April 2021 put Sphere on constructive notice of the lien and thus that Sphere cannot qualify as a bona fide purchaser. (ECF No. 23 at 4-5.) The Court finds that while recording an affidavit under NRS § 17.150(4) is not a condition precedent to the creation of a valid lien as to a debtor, failure to record such an affidavit may plausibly result in inadequate notice to third-party purchasers and prevent a creditor from enforcing a lien against real property obtained in good faith. On this basis, the Court finds that Sphere has stated a plausible claim.

Under Nevada law, a purchaser of real property with notice of a prior interest takes the property subject to that interest. *See* NRS § 111.320; *Buhecker v. R.B. Petersen & Sons Const. Co., Inc.*, 929 P.2d 937, 939 (Nev. 1996). "A subsequent purchaser with notice, actual or constructive, of an interest in the land superior to that which he is purchasing is not a purchaser in good faith, and not entitled to the protection

---

[10]Sphere also seeks judgment declaring that Pawnee's October 2022 re-recording of the judgment with an additional declaration of judgment did not create a lien on the Property because Clark did not own the property at the time of that recording. (ECF No. 1 at 6-7.) There is no dispute that Clark no longer owned the property at that time. Pawnee also does not dispute that the October 2022 recording had no impact on legal rights to the Property in its Motion, and such an argument is contingent on the invalidity of the initial April 2021 attempt to create a lien. Thus, the Court will not address the October recording further in resolving this Motion.

of the recording act." *Allison Steel Mfg. Co. v. Bentonite, Inc.*, 471 P.2d 666, 669 (Nev. 1970). NRS § 247.120(1) provides that "each county recorder shall, upon the payment of the prescribed statutory fees, record separately, in a manner which will allow a legible copy to be made" specified documents including "transcripts of judgments which by law are made liens upon real estate in this state." NRS § 247.190 further provides that "[a] document acknowledged or proved and certified and recorded in the manner prescribed in this chapter from the time of depositing the document with the county recorder of the proper county for record, provides notice to all persons of the contents thereof, and all third parties shall be deemed to purchase and take with notice."

Whether or not a purchaser of real property performs a title search, "he or she is charged with constructive notice of, and takes ownership of the property subject to, any interest such a title search would reveal." *Adaven Management, Inc. v. Mountain Falls Acquisition Corp.*, 2008, 191 P.3d 1189, 1195 (Nev. 2008). In Nevada, record indexes are arranged alphabetically by grantor and grantee name, and a party must "search the grantor index . . . to see whether he or she transferred or encumbered the property during the time between his or her acquisition of the property and its transfer to the next person in the chain of title." *Id.*

Here, Pawnee's failure to record an affidavit of judgment is meaningful. The automatic constructive notice provided under NRS § 247.190 requires that such a recording be made "in the manner prescribed" by statute to provide notice of its contents. Because NRS § 17.150(4) prescribes that an affidavit "shall" be recorded at the same time as a judgment, and Pawnee did not record such an affidavit, the Court finds that Pawnee's April recording of its default judgment falls outside the blanket constructive notice protection conferred by the NRS § 247.190. This reading aligns with a common-sense view of legislative intent. The affidavit required by section 17.150(4) plainly connects information about a judgment debtor—who may, for example, have a common name and be otherwise difficult to identify through a brief abstract of judgment—with information about the debtor's property. The legislature strengthened

this connection when it amended the statute in 2011 to require that creditors affirm all property information included in an affidavit is based on personal knowledge. *See* 2011 Nev. Laws Ch. 388 (S.B. 186). In short, a primary benefit of requiring a recorded affidavit of judgment is that it makes it easier for third parties to identify debtors, associated liens, and currently-owned properties. The Court concludes it would frustrate legislative intent to find that failure to record an affidavit of judgment is wholly irrelevant to its consideration of constructive notice.

The Court finds that Sphere has alleged enough facts to support a plausible inference that it had no constructive notice of Pawnee's lien on the Property after an adequate search. *See Iqbal*, 556 U.S. at 678. It is true that even where Pawnee failed to record an affidavit of judgment, Sphere is nevertheless charged with constructive or inquiry notice of a Pawnee's lien that a title search would reveal, whether or not it in fact conducted such a search. *See Adaven Mgmt.*, 191 P.3d at 1195. But as Sphere alleges, "the [April 2021] standalone default judgment identified the judgment debtor as 'Donald Clark, Jr.,' rather than 'Donald Clark' as he was known to Plaintiff based upon the documents in the sale." (ECF No. 16 at 5.) Absent a properly-recorded affidavit, Pawnee's recorded judgment did not include any further identifying information about Clark, such as his social security or driver's license number. (*Id.*) The recorded judgment did not itself include any information about the Property, such as its APN. (*Id.*) And it did not include a statement confirming that Clark was the legal owner of the Property. (*Id.*) Here, Sphere states facts indicating that the only information tying Pawnee's lien to the Property at the time of purchase was Clark's name itself presented non-identically across multiple recordings.

As Pawnee notes, constructive or inquiry notice may potentially arise when a party searches the grantor and grantee index and ignoring names with suffixes. (ECF No. 23 at 5.) *See Berge v. Fredericks*, 591 P.2d 246, 249 (1979) (emphasizing that a subsequent purchaser is not a good faith purchaser without notice when they possess facts that would inspire a reasonable person to make further inquiry). *But see Tai-Si Kim*

v. Kearney, 838 F. Supp. 2d 1077, 1087-88 (D. Nev. 2012) (quoting Berge, 591 P.2d at 249) (noting that a subsequent purchaser claiming protection "may rebut the presumption of notice [of an unrecorded or improperly recorded interest] by showing that he made due investigation without discovering the prior right," and that the question of adequacy of investigation is one for the fact finder). Counties in Nevada vary in their indexing structures and the appropriate construction of a title search may similarly vary.[11] Both "Donald" and "Clark" are common names. And in other cases where the Nevada high court has charged parties with constructive or inquiry notice even where there are recorded errors in grantor names or where property information is missing in recorded documents, parties have had more information than Sphere had when it purchased the Property in the instant case. See, e.g., Adaven Mgmt., 191 P.3d at 1195 (finding that plaintiff had inquiry notice of a prior water right because it had access to a both a deed of sale and a deed of trust in the grantor-grantee index and the permit number was included explicitly in the deed of trust).

Taking the facts in the light most favorable to the Plaintiff, the Court finds that Sphere has stated a plausible claim for declaratory relief on the basis that as a third-party in Washoe County, Sphere did not have notice of Pawnee's lien and qualified as a bona fide purchaser for value. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court accordingly denies Pawnee's motion to dismiss Sphere's quiet title claim.

///

---

[11]In the context of tax liens on property, while governing statutes differ from judgment lien statutes in significant ways, courts have come to inconsistent conclusions about what constitutes a reasonable search of a recording office, including with regard to errors in names. See In re Crystal Cascades Civ., LLC, 398 B.R. 23, 29-30 (Bankr. D. Nev. 2008), aff'd, 415 B.R. 403 (B.A.P. 9th Cir. 2009) (noting that locality—and the particular manner in which liens are indexed and searchable—introduces salient factual questions about adequacy of a search). Compare United States v. Polk, 822 F.2d 871 (9th Cir.1987) (enforcing a tax lien when there was a disparity in record names between "Roy Bruce Polk" and "Bruce Polk"), with Haye v. United States, 461 F.Supp. 1168 (C.D.Cal.1978) (finding a superior third party property interest when the notice of tax lien misspelled a taxpayer's name as "Castello" rather than "Castillo").

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Pawnee's motion to dismiss (ECF No. 12) is denied.

DATED THIS 17th Day of November 2023.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE